```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA

4              v.                        12 Cr. 626 (ER)

5   KEVIN BURDEN,
    RAYMOND CHRISTIAN,
6   GLENN THOMAS,
    RASHAWN VASSELL,
7   TYRELL WHITAKER,
    JAMES WILLIAMS,
8                                        Conference
                    Defendants.
9
    ------------------------------x
10
                                         New York, N.Y.
11                                       September 11, 2013
                                         2:15 p.m.
12
    Before:
13
            HON. EDGARDO RAMOS
14
                                         District Judge
15

16
            APPEARANCES
17

18
    PREET BHARARA
19       United States Attorney for the
         Southern District of New York
20  ANDREW BAUER
    KAN NAWADAY
21       Assistant United States Attorneys

22  AVRAHAM C. MOSKOWITZ
         Attorney for Defendant Burden
23
    BOBBI C. STERNHEIM
24  ANTHONY STRAZZA
         Attorneys for Defendant Christian
25
    DON D. BUCHWALD
```

JOSHUA L. DRATEL
        Attorneys for Defendant Thomas

ANDREW G. PATEL
        Attorney for Defendant Vassell

GEORGE R. GOLTZER
YING STAFFORD
        Attorneys for Defendant Whitaker

RICHARD M. JASPER, JR.
SUSAN K. MARCUS
        Attorneys for Defendant Williams

```
 1                 (Case called)

 2                 MR. BAUER:  Andrew Bauer and Kan Nawaday for the

 3      government.

 4                 MS. STERNHEIM:  Bobbi C. Sternheim and Anthony Strazza

 5      for Raymond Christian, who is seated in the jury box.

 6                 MS. MARCUS:  Susan Marcus and Richard Jasper for Mr.

 7      James Williams, who is seated in the jury box.

 8                 MR. PATEL:  Good afternoon, your Honor.  Andrew Patel

 9      for Mr. Vassell, who is seated in the jury box.

10                 MR. BUCHWALD:  Good afternoon, your Honor.  Don

11      Buchwald and Josh Dratel for Mr. Thomas, who is seated in the

12      jury box to my far left, your far right.

13                 MR. GOLTZER:  Good afternoon, your Honor.  George

14      Goltzer and Ying Stafford for Mr. Whitaker, who is not present.

15                 MR. MOSKOWITZ:  Good afternoon.  Avi Moskowitz for Mr.

16      Burden, is who is in the jury box.

17                 THE COURT:  Good afternoon to all of you.  Mr.

18      Goltzer, where is Mr. Whitaker?

19                 MR. GOLTZER:  We received a communication this morning

20      from the government that Mr. Whitaker apparently had refused to

21      come to court.  It was a little more complicated than that,

22      I'll be very candid with you.  I received a communication that

23      he was taken by surprise by the court date; because I didn't

24      tell him why, he wasn't going to come.  I sent an email back to

25      him explaining why he had to be here, instructing him to come,
```

 1    contacted the government and said please try again.  By that

 2    time the bus was gone.  My apologies.

 3              THE COURT:  Very well.  We have a number of things to

 4    do this afternoon.  I guess the first is that we have a

 5    superseding indictment.  Is that correct?

 6              MR. BAUER:  Yes, your Honor.  After the indictment was

 7    returned, I had asked the defendants if they wanted to have

 8    immediate arraignment or just do the arraignment here today.

 9    They all suggested that we do the arraignment here today.

10              THE COURT:  Can you for the Court summarize what, if

11    any, general changes there are to the indictment.

12              MR. BAUER:  There were only two.  The first was that

13    we added Tyrell Whitaker back into the indictment.  He was once

14    there, now he is there again.  The second is we added a 924(c)

15    count.

16              THE COURT:  Are all of the defendants named in that

17    count?

18              MR. BAUER:  Yes, they are.

19              THE COURT:  So all of the defendants are named in all

20    of the counts, is that correct?

21              MR. BAUER:  I believe that's correct.  I gave my copy

22    up to your deputy, but I believe that's correct.  A narcotics

23    conspiracy.  That's right, Tyrell Whitaker is not charged in

24    the narcotics conspiracy count.

25              THE COURT:  Very well.  Have defense counsel received

1    a copy of the superseding indictment?

2           MS. STERNHEIM:  Yes.

3           THE COURT:  Does anyone want me to read the indictment

4    publicly?

5           MS. STERNHEIM:  No, your Honor.

6           THE COURT:  How do the defendants plead to the

7    superseding indictment?  Everyone has indicated they plead not

8    guilty to the superseding indictment.

9           I take it there are no Bell issues that folks think

10    are appropriate to raise at this time concerning the new

11    charges.

12           Let me start again with you, Mr. Goltzer.  What is the

13    status of your appeal of the decision concerning transferring

14    Mr. Whitaker to adult status?

15           MR. GOLTZER:  We filed a notice of appeal.  Ms.

16    Stafford has been very helpful being in contact with the clerk.

17    We are having the appeal, obviously, under seal.  She has filed

18    a form B.  We are waiting for a transcript of the hearing

19    before your Honor so we can proceed to get a scheduling order

20    in place.

21           Under the rules, as I am sure the Court is aware, we

22    have a period of time in which to file our main brief, the

23    government has a period to respond.  The maximum amount of time

24    for that is 90 days from the date we get the transcripts.  We

25    can probably do it sooner.  I don't think we need 90 days to

1    get this briefing done.

2            That is where we stand.  We have also filed a motion

3    with your Honor's chambers to stay this proceeding pending that

4    appeal for the reasons stated in our papers.

5            To the extent that there is a November 4th trial date,

6    I don't think we would be in a position to take part in that.

7    The trial date is an open issue with respect to other people.

8    I think there is a problem which the government can probably

9    address.  If your Honor wants to sever us, we have no

10    objection.

11            THE COURT:  Very well.  We should probably address the

12    scheduling issue now.  We do have a trial date in this case.

13    We do have some dates that are connected to that concerning the

14    disclosure of pretrial materials.  We have gotten at least a

15    couple of motions for a stay, and I believe that other counsel

16    have indicated in some fashion a conflict with the current

17    trial date.  Where do the parties stand?  Would the government

18    be prepared to proceed in November?

19            MR. BAUER:  The government is prepared, your Honor.  I

20    think it is mainly an issue with defense counsel's schedule.

21    That being said, to the extent that the court is inclined to

22    move the date, depending on where we end up, I think the

23    government will be in a position to consent to the adjournment.

24            I'll be frank up front.  Our primary goal with an

25    adjournment is to avoid trying the case twice.  To the extent

1     we are going to adjourn the case, I think it is in the

2     government's interest to accommodate the appeal schedule for

3     Mr. Whitaker.  We would either go forward on November 4th or

4     allow for that appeal process to run its course.  Giving it

5     three or four months sounds like it is something that works

6     with the Court.

7               There are a lot of defense counsel in the room here.

8     Everyone has a lot of scheduling conflicts.  If it is OK with

9     you, I'd like to leave it to defense counsel and then perhaps

10    opine after a date is settled on.

11              THE COURT:  My inclination would be to wait until the

12    appeal process with Mr. Whitaker is out.  I wouldn't want to

13    try him as an adult and then have the circuit find that I

14    imprudently transferred him to adult status.

15              Which of the defense lawyers wants to start off and

16    tell me when they want to try this case and why?  Mr. Patel.

17              MR. PATEL:  Your Honor, I would be requesting that we

18    start, assuming it works out with Mr. Goltzer and the Second

19    Circuit's schedule, early in February, February 10th, if that

20    was convenient to your Honor.

21              The reason for that, and this is actually a twofold

22    application, your Honor, I have a 3- to 4-week trial starting

23    November 18th in front of Judge McMahon and then a 2-week trial

24    on January 6th in front of Judge Pauley.  Those two matters are

25    certain to go.  Ms. Sternheim and I have a 2- to 3-month trial

1    in front of Judge Kaplan on April 7th of next year.  So

2    February would allow us to do this trial and allow me to get

3    ready for the trial that I have with Ms. Sternheim.

4         When the trial date was originally set, your Honor, it

5    was anticipated that Mr. Frederick Cohn, my co-counsel, would

6    try the case in November.  However, your Honor, at this time,

7    and I have spoken with Mr. Vassell and Mr. Cohn, I would ask

8    that Mr. Cohn be relieved.  His relationship with the client

9    has deteriorated to the point where I think it would be

10   inadvisable for him to continue working on this matter.  Since

11   he is not, if your Honor grants that application, and I would

12   really ask that you do, I am just not available to try this

13   case in November.

14        THE COURT:  The additional counsel was assigned at a

15   point where the government believed that this case might

16   qualify for capital treatment.  I allowed counsel to stay on

17   given the seriousness of the charges after the determination

18   was made by main justice that this case not be a capital case.

19   Mr. Patel, if you are telling me that you are prepared and

20   capable of representing Mr. Vassell on your own and Mr. Vassell

21   represents that it is his wish that Mr. Cohn be relieved, I'm

22   happy to do that.

23        Mr. Vassell?

24        DEFENDANT VASSELL:  Yes.

25        THE DEFENDANT:  Is it your wish that I relieve Mr.

 1    Cohn from representing you?

 2              DEFENDANT VASSELL:  Yes.

 3              THE COURT:  That application is granted.

 4              MR. PATEL:  Thank you, your Honor.

 5              THE COURT:  Ms. Sternheim.

 6              MS. STERNHEIM:  Thank you.  As you have heard, I have

 7    a case before Judge Kaplan.  Mr. Patel is my co-counsel.

 8    However, because of prior commitments I have before that, if

 9    this case does not begin by the first week of September, I

10    would not be available to try this case before the conclusion

11    of the trial before Judge Kaplan.

12              THE COURT:  When is the trial before Judge Kaplan?

13              MS. STERNHEIM:  April 7th.  It is a case that involves

14    a very protracted terrorist charge, and many of my witnesses

15    are abroad.  There is a voluminous amount of discovery.  I

16    would not be able to devote time in February to try this case

17    and to give Mr. Christian the attention that he deserves.

18              THE COURT:  If you cannot try the case in December,

19    what is the earliest date that you can try this case?

20              MS. STERNHEIM:  Sometime in the summer.

21              THE COURT:  The summer of 2014?

22              MS. STERNHEIM:  Yes.

23              MR. PATEL:  Your Honor, it is the embassy bombing

24    case.  My client is charged with 224 counts of murder.  We have

25    witnesses from literally all over the world and approximately

1    300,000 pages of discovery so far.

2              THE COURT:  Mr. Buchwald.

3              MR. BUCHWALD:  Your Honor, I am scheduled to be a

4    Federal Bar Council winter convention bar conference February

5    8th through the 16th.  I have trials that are scheduled on

6    December 4th and January 13th before that.  This date, the

7    November 4th date, was set a long time ago.  We made our plans

8    around that date, including with other judges.

9              I have indicated that we could probably move back a

10   week.  I think that Judge Marrero might accommodate, might

11   start our December trial a week later.  But it becomes

12   extremely difficult for us if we are not proceeding with the

13   November trial.  We could go to trial at the end of March, but

14   I understand that there are people who cannot do that.

15             THE COURT:  You want to keep the date?

16             MR. BUCHWALD:  We prefer to keep the date or move it a

17   week if that is something that helps.

18             THE COURT:  If we don't keep the date and go into

19   2014, when can you comfortably --

20             MR. BUCHWALD:  Any time after mid March.  I don't have

21   any other trials at this point after that.  I should indicate

22   our client has indicated consistently that he wishes to have a

23   trial at the earliest possible time, and we have always taken

24   that position on this matter.  Mr. Dratel, co-counsel, has have

25   the same difficulty.  He starts March 31st with a 2- to 3-month

1   trial.

2          MR. DRATEL:  That is very likely to go.  I don't have

3   anything before then.

4          THE COURT:  You have a 2-month trial starting in

5   March?

6          MR. DRATEL:  Yes, March 31.

7          THE COURT:  So April-May?

8          MR. DRATEL:  Yes.

9          MR. MOSKOWITZ:  Your Honor, on behalf of Kenneth

10  Burden, I am looking at an email from Mr. Ginsberg, who

11  unfortunately is not here.  He has a trial on January 1 and

12  February 1 and one in April.  He indicates he will be able to

13  do it in March through early to mid April.

14          I am available at the moment any time between now and

15  whenever the Court wants to set it.  I don't have a trial

16  scheduled at the moment.  But Mr. Burden would like to get the

17  trial done.

18          THE COURT:  Anyone else?

19          MS. MARCUS:  Your Honor has already heard Mr. Jasper

20  and I.  We are not available to do the November trial date.  We

21  are available December, November, February, March, but we do

22  have a conflict with the November 4 trial date.

23          THE COURT:  It appears as though the earliest date

24  that everyone has available is June.

25          MS. STERNHEIM:  Your Honor, the trial before Judge

1    Kaplan is at the outside 3 months, and I would need a little

2    time to prepare.

3           THE COURT:  That one starts when?

4           MS. STERNHEIM:  April 7th.  That's April, May, and

5    June.

6           THE COURT:  So July.  I think the defendants would

7    probably want something earlier than that.

8           MS. STERNHEIM:  I appreciate that, your Honor.  Your

9    Honor will make whatever decision necessary with regard to my

10   continuation.  But because of my other responsibilities, I am

11   making the statements that I am.

12          THE COURT:  I completely understand.  It would appear

13   as though if we are going to have something prior to

14   essentially a year from now, we would have to go with either

15   co-counsel or substitute counsel.

16          Mr. Strazza, are you co-counsel in this case?

17          MR. STRAZZA:  I am, Judge.  I am associate counsel

18   under the mentoring program in the Southern District.

19          THE COURT:  OK.

20          DEFENDANT WILLIAMS:  Excuse me, your Honor, I have to

21   speak on record.

22          THE COURT:  Mr. Williams, why don't you not speak.  If

23   you want, we can hold you afterwards and we can talk to you.

24   We need to get this resolved.

25          DEFENDANT WILLIAMS:  It's about a Brady violation.

```
1         THE COURT:  We'll talk later.

2         DEFENDANT WILLIAMS:  All right.

3         THE COURT:  Mr. Buchwald.

4         MR. BUCHWALD:  Your Honor, potentially impacting on

5   this, there are severance motions that have been made by at

6   least one co-defendant, and I understand the preference

7   certainly of the government and of the Court to try one case

8   rather than two if that is possible and if that is appropriate

9   under the law.  But there may be something to be said in

10  particular for this severance motion, which may also solve some

11  of the problems.

12        Mr. Burden and Mr. Williams, who are not alleged by

13  the government to be present at the homicide -- I believe I

14  have that correct.  I know Mr. Burden's statement is sort of

15  the focus of the severance concerns from a number of the

16  defendants' standpoint.  The government may represent that it

17  is not offering that, in which case that is alleviated.

18        But there may be something to be said for severing

19  those defendants and then letting Mr. Goltzer's client join

20  that second trial if it is the Burden and Williams trial, and

21  that may accommodate the various lawyers' concerns, if I am

22  reading Ms. Sternheim right that she can go earlier but not

23  later.  I know we can go earlier but not later.  Who did I

24  leave out?

25        MR. PATEL:  I can go later but not earlier.
```

14

1      MR. BUCHWALD:  Then maybe we can move him into the

2 second group.  But the severance issue may impact this if your

3 Honor sees merit to that severance motion.

4      THE COURT:  Yes, sir?

5      MR. GOLTZER:  If I may comment on Mr. Buchwald's

6 remarks.  Mr. Whitaker is mentioned in the Burden-Mallory

7 caper.  Having him join in that trial hypothetically would not

8 obviate the need to have serious severance motions by Mr.

9 Whitaker.  We haven't filed motions because we haven't been

10 party to this proceeding.  We haven't waived them, certainly.

11 I just want to make the Court aware of that.

12      THE COURT:  Mr. Bauer, did you want to say something?

13      MR. BAUER:  To the extent our various subject matters

14 are bleeding into one another, the government stands by its

15 motion response in that we oppose severance.  It may very well

16 be that Mr. Williams and Mr. Burden didn't go into that house

17 and be there when Mr. Henry was killed, but they were integral

18 parts of this conspiracy.  Aside from the scheduling issues,

19 which are very real, from a substantive legal perspective the

20 government sees no grounds for severance.

21      DEFENDANT BURDEN:  With all due respect, I need to put

22 on the record that we have been exposed to a Brady violation

23 being that we weren't given our Brady information at the time

24 of our arrest.

25      THE COURT:  I forget your name.

D9bcburc                                                                          15

1              DEFENDANT BURDEN:  Burden.

2              THE COURT:  Mr. Burden, I am going to ask you to

3    please refrain from making comments on the record.  You are

4    represented here.  You run the risk of saying something that

5    could be used against you.  You run the risk of having me place

6    you under oath.  I would really recommend and ask you to hold

7    off on whatever you are going to say.

8              I'll give you an opportunity to speak with your lawyer

9    before we break.  If your lawyer wants to bring something to my

10   attention, I am sure he or she will, and we can address it at

11   the appropriate time.  OK?  I would ask all of the defendants

12   to please refrain from making any comments concerning any

13   purported Brady violations that you see here.

14             What I am going to do, and I am prepared to rule on

15   the motions that have been filed.  The defendants Williams and

16   Thomas have filed motions for bill of particulars, severance,

17   additional discovery, challenges to informant reliability, and

18   other miscellaneous relief.  Defendants Vassell, Christian, and

19   Burden have joined in the requests of their co-defendants to

20   the extent such requests apply to them.

21             The purpose here is to rule on the motions --

22             MR. BUCHWALD:  Your Honor, I believe Mr. Thomas also

23   joins.  Even though our motion was first, I believe we put in a

24   request that we be joining in any subsequently filed motions.

25             THE COURT:  Yes.

1              MR. BUCHWALD:  Thank you.

2              THE COURT:  Since the moving defendants have expressed

3     the desire to join each other's motions, the Court will address

4     the pending motions jointly to the extent they present

5     overlapping requests for relief and substantially similar

6     arguments in support of such motions.

7              Moving first to the bill of particulars, defendants

8     have requested bills of particulars with respect to all counts

9     in the indictment on the ground that the indictment and the

10    discovery produced are deficient to allow them to prepare for

11    trial.  The information they seek includes, among other things,

12    information concerning the identity of others and other acts

13    alleged in each count of the indictment, a description of each

14    overt act carried out by each member of the conspiracy,

15    including members identified as others, and when and where and

16    with whom the moving defendants sold or possessed controlled

17    substances, arranged for provision of firearms, and withdrew

18    from the alleged conspiracy.

19             The decision to grant the bill of particulars, of

20    course, is left to the discretion of the trial court.

21             A bill of particulars is not an investigative tool or

22    a tool of discovery but rather is meant to apprise the

23    defendant of essential facts of a crime and should be required

24    only where the charges of an indictment are so general that

25    they do not advise the defendant of the specific acts of which

1    he is accused.  Where the information sought by the defendant

2    is provided in the indictment or in some acceptable alternate

3    form, no bill of particulars is required.

4            Here the information contained in the indictment,

5    combined with the background information contained in the

6    government's opposition and the extensive discovery the

7    government has provided in this case, is sufficient to permit

8    the moving defendants to adequately prepare for trial, prevent

9    surprise, and enable each defendant to plead double jeopardy in

10   the event of a subsequent prosecution for the same offense.

11           In particular, the government has represented that it

12   has already provided much of the information sought by the

13   moving defendants in the form of attorney proffers as to what

14   it anticipates cooperating witnesses will say at trial

15   regarding the individual defendants in this case.  Thus, moving

16   defendants' motions for a bill of particulars are denied.

17           The moving defendants via defendant Williams seek

18   severance pursuant to Federal Rule of Criminal Procedure 14

19   because of the risk of prejudicial spillover, differing levels

20   of culpability and proof, and potential confrontation clause

21   violations resulting from the introduction of co-defendant

22   statements and potential for jury confusion.

23           Rule 14 permits severance of properly joined

24   defendants at the discretion of the trial court to avoid

25   prejudice to a defendant or government.  However, there is a

1    strong preference in the federal system for joint trials of

2    defendants who are indicted together.

3            Where, as here, defendants are alleged to have

4    participated in a common plan or scheme, the presumption in

5    favor of joint trials is particularly strong.  All of the

6    moving defendants are charged with participating in a violent

7    robbery that caused the death of Jeffrey Henry.  Likewise,

8    moving defendants are all charged with using and possessing

9    firearms during and in relation to the conspiracy.

10           Arguments that any evidence that any of the individual

11   defendants will suffer prejudice by the introduction of

12   evidence of the co-defendants' criminal activities are

13   therefore unpersuasive, because evidence of the criminal

14   activities of other members of the alleged conspiracy is

15   admissible against each individual defendant to prove the

16   existence, nature, purposes, and activities of the charged

17   conspiracy.  Accordingly, there is no risk of spillover

18   prejudice resulting from the introduction of such evidence in

19   this case.

20           Arguments that one defendant played a comparatively

21   lesser role in the charged conspiracy or that the quality or

22   quantity of evidence against one defendant differs greatly from

23   that of other defendants are also insufficient to overcome the

24   strong presumption against severance.

25           Differing levels of culpability and proof are

```
 1   inevitable in any multidefendant trial and, standing alone, are

 2   insufficient grounds for separate trials even where defendants

 3   who are only marginally involved and tried alongside those

 4   heavily involved or where a defendant who was not personally

 5   charged with any acts of violence is jointly tried with

 6   co-conspirators who are alleged to have committed violent overt

 7   acts.

 8           Further, to the extent that any of the moving

 9   defendants can show that they will suffer prejudice from the

10   introduction of proof of acts committed by co-defendants, such

11   prejudice can be properly mitigated by instructing the jury to

12   consider the evidence against each defendant separately from

13   the evidence presented against other defendants.

14           Moving defendants have not shown that the possibility

15   of prejudicial spillover creates a serious risk that the jury

16   in a joint trial of all moving defendants will be unable to

17   make a reliable determination of each defendant's guilt or

18   innocence.  Severance on that basis is therefore denied.

19           With respect to the arguments for severance based on

20   potential confrontation clause violations, the government

21   represents that it will seek to introduce statements of

22   co-defendants, if any, only after those statements have been

23   redacted in conformity with Bruton v. United States.

24           The government has also represented that it will

25   request that the Court provide a limiting instruction to the
```

jury if and when any such statement is introduced indicating that the jury should consider that statement only against the defendant making the statement and not against any other defendant. When a confession is redacted so that it does not facially incriminate the defendant, its mission with a proper limiting instruction does not violate the confrontation clause.

Defendant Williams specifically complains that if the government introduces a videotaped conversation that occurred in July 2012 between co-defendant Burden and Jamar Mallory, the cooperating witness, it will prejudice Williams to such a great degree that severance is necessary.

However, the potential introduction of these and other co-defendant statements, after proper redaction and accompanied by a proper limiting instruction, does not provide a basis for severance. Therefore, Williams' and the moving defendants' motion for severance on that basis is similarly denied.

Moving defendants also request leave to later seek a severance on the grounds of conflicting defenses and/or use of multiple prosecution teams. But the mere existence of conflicting defenses or co-defendants' desire to place blame an each other does not warrant severance.

Rather, antagonistic defenses must be so irreconcilable as to be mutually exclusive. Given that the current hypothetical nature of co-defendants' conflicting defendants, moving defendants' request for severance on this

1   basis is denied without prejudice as premature.

2          Finally, moving defendants oppose a joint trial on the

3   grounds that it may be overly large and inefficient.  Whether

4   or not their characterization of the trial proves accurate,

5   their claim would only justify severance if one might expect

6   separate trials to be shorter and less complicated than a joint

7   trial.

8          However the nature of the indictment's allegation

9   belies that expectation in this case.  Given the charges in

10  this case, there would seem to be little value in terms of

11  length and complexity to conducting separate trials.

12  Accordingly, the moving defendants' motions for severance on

13  that basis are also denied.

14         The moving defendants have asserted a variety of

15  arguments for additional discovery that they contend the

16  government should be directed to produce at this time or by a

17  date certain well in advance of trial.  The Court will address

18  those motions jointly by category.

19         Moving defendants have requested disclosure of

20  exculpatory information pursuant to Brady v. Maryland and Kyles

21  v. Whitley, information that goes to the credibility of

22  government's witnesses at trial, pursuant to Giglio, and Jencks

23  Act material pursuant to 18 U.S.C. section 3500.

24         In its response, the government has represented that

25  it has produced Brady material and that it is not aware of any

additional Brady violations or any additional Brady material in
this case and that it recognizes its continuing obligation to
disclose all such materials and to make a diligent search for
such material that may be in the possession of the prosecution
team, including investigative agents and officers.  The
government further represents that it will continue to provide
timely disclosure of any additional Brady material.
Accordingly, the moving defendants' motion to compel the
government to produce Brady is denied.

          With respect to impeachment material, the government
is only required to produce Giglio material in time for its
effective use at trial.  Here again the government, in good
faith, has represented that it intends to produce Giglio
material in compliance with the Court's anticipated scheduling
orders related to the trial dates in this case.  The moving
defendants have not provided any basis for ordering early
disclosure of such materials.  Accordingly, the moving
defendants' motion for early production of Giglio is denied.

          Moving defendants also seek early production of prior
statements pursuant to the Jencks Act no later than 60 days
before trial.  As the text of the statute makes clear, the
government is under no obligation to produce such material
until after a witness has testified on direct examination.
Further, this Court looks the authority to compel the early
disclosure of Jencks Act material.  Moreover, the government

1   has in good faith represented that it intends to produce the

2   material in compliance by dates set with the Court.  Therefore,

3   the moving defendants' motion to compel early disclosure of

4   Jencks Act material is denied.

5        Moving defendants have also requested an order

6   compelling the government to provide additional Rule 16

7   discovery and early notice of incidents that the government

8   seeks to introduce at trial pursuant to Federal Rule of

9   Criminal Procedure 404(b).  In its omnibus opposition, the

10  government represents that it has produced Rule 16 discovery

11  and that defendants have not demonstrated the need to obtain

12  any additional Rule 16 materials at this time.  Accordingly,

13  that motion is denied.

14       With respect to the Rule 404(b) material, the

15  government represents that it will provide this material in

16  advance of trial.  In its opposition the government suggested

17  that it could make the Rule 404(b) disclosure of other crimes

18  by October 7.  That, of course, was contingent on the Court

19  maintaining the November date.

20       If the Court does not maintain that date, and it

21  appears that I will not, then the government presumably will

22  provide the 404(b) material in accordance with this schedule,

23  which appears to be approximately one month prior to the trial

24  date.  While that rule itself indicates reasonable notice of

25  404(b) materials, no specific time frame is given, and at this

1    point the Court deems it reasonable for the government to

2    provide those materials one month in advance of the trial date.

3         Moving defendants, again through Mr. Williams, request

4    that the government provide its list of witnesses and experts.

5    The government represents that it has not yet determined which

6    witnesses or experts it will call at trial or its exhibit list.

7    However, the government indicates that it expects to furnish

8    the names of its trial witnesses during the week before trial

9    is scheduled to commence.

10        The government also represents that it expects to make

11   formal disclosure of its expert witnesses a month before trial.

12   Accordingly, the moving defendants' request for the

13   government's witness list is denied as premature.

14        Moving defendants also request that the government

15   disclose all forms of statements made by any co-conspirator

16   that the government may offer at trial pursuant to Rule

17   801(d)(2)(E).  The government requests that at the close of

18   evidence at trial the Court determine whether a preponderance

19   of the evidence establishes all the prerequisites of

20   admissibility of the co-conspirator statements and explicitly

21   rule on their admissibility.  The government also argues that

22   it would be, quote, truly impossible to particularize the

23   co-conspirator statements that it intends to offer at trial.

24        The Second Circuit has expressly approved the practice

25   of admitting statements under Rule 801(d)(2)(E) at trial

1    subject to the government's introduction of evidence which will

2    support the required finding under Bourjaily v. United States.

3    Accordingly, the Court declines to order the disclosure of

4    co-conspirator statements at this time and denies the moving

5    defendants' motion as premature.

6           Defendant Williams seeks to preclude from trial all

7    witnesses who have been paid and/or assisted by a combination

8    of payment or other consideration from testifying because they

9    are, quote, inherently unreliable.  In the alternative, Mr.

10   Williams requests the Court to convene a pretrial reliability

11   hearing at which counsel may examine government cooperators

12   outside the presence of the jury and without the rules of

13   evidence to permit the Court to decide whether their testimony

14   is sufficiently reliable.

15          Citing to a law review article concerning "How

16   Snitches Contribute to Wrongful Convictions," Williams argues

17   that cross-examination may be an insufficient tool to establish

18   the veracity of statements made at trial by government

19   cooperators.

20          Williams insists that the government provide

21   corroboration for its cooperating witnesses and requests that

22   the government immediately disclose, among other things, the of

23   identity all cooperating witnesses, the sum and substance of

24   their anticipated trial testimony, and a copy of the

25   information or cooperating witnesses' agreements to cooperate

1   and/or testify.

2          Williams also claims that the government's provision

3   of consideration to its cooperators, presumably in the form of

4   monetary compensation or anticipated sentencing reduction,

5   amounts to an equal protection violation and the denial of due

6   process.

7          While defendant argues that cooperating witnesses

8   and/or informants provide inherently unreliable testimony, a

9   witness's motives to lie do not render his testimony untrue or

10  constitutionally inadmissible.  Although the government in its

11  discretion may seek a sentencing reduction for cooperating

12  witnesses who have committed other offenses, the government

13  cannot guarantee that the Court will approve a downward

14  departure from the sentencing guidelines.  Moreover, the

15  defendants' arguments concerning potential witness

16  unreliability stemming from financial compensation are

17  baseless.

18         The government correctly notes that challenges to

19  witness credibility and reliability are the precise type of

20  questioning reserved for cross-examination during which the

21  defense is free to ask a cooperator about the benefits he hopes

22  to receive from the government and what incentives exist to lie

23  or tell the truth.  Likewise, method of payment is properly a

24  matter for the jury to consider in weighing the credibility of

25  the informant.  And a lack of corroboration goes to the weight

1    but not the sufficiency of evidence.

2            Thus, Williams' requests to preclude informants from

3    testifying at trial, to convene a reliability hearing, and to

4    order the government to corroborate its informants' testimony

5    are denied.

6            With respect to Williams's request for the disclosure

7    of informants' identity in general, the government enjoys a

8    privilege to withhold from disclosure the identity of

9    individuals who inform law enforcement officers about

10   violations of the law.

11           However, where the disclosure of an informer's

12   identity or the contents of his communication is relevant and

13   helpful to the defense of an accused or is essential to a fair

14   determination of a cause, the fundamental requirements of

15   fairness require that the privilege must give way.  Quoting

16   Jackson 435 F.3d at 69.

17           The defendants bear the burden of demonstrating the

18   need for disclosure of an informant's identity and must show

19   that without such disclosure, they will be deprived of the

20   right to a fair trial.  Disclosure of a confidential

21   informant's identity is an extraordinary remedy, and defendants

22   must do more than simply allege that disclosure of the

23   informant's identity will be of assistance in preparing for

24   trial.

25           Here Williams has done nothing more than assert that

1    the testimony of cooperating witnesses will be central to the

2    government's case against them.  The Court declines to order

3    the government to produce identification information relating

4    to cooperating witnesses under these circumstances.  The Court

5    has considered Williams' additional arguments and finds them

6    unavailing.  Accordingly, Williams' motion to challenge the

7    informant reliability is denied in its entirety.

8              That constitutes the decision of the Court.

9              Did I overlook any motions that were made by any of

10    the defendants, putting aside the motions or the complaints

11    that have been expressed by the defendants this afternoon?  OK.

12              What remains to be done?  I want to take the issue of

13    the trial date under consideration.  I want to give counsel the

14    opportunity to speak with their clients to see what, if any,

15    applications they may wish to make to me this afternoon.

16              I tell you that I am inclined with respect to the

17    trial date certainly to stay the November date due to the

18    appeal of Mr. Whitaker to the Second Circuit and to give the

19    Second Circuit sufficient time to consider his appeal.  But I

20    would rather do it sooner than the summer of 2014.  It would be

21    my preference to try this case no later than April of next

22    year.  Again, that is my current inclination.

23              What I will do now, unless counsel wants to raise any

24    other issue, is give counsel an opportunity for a couple of

25    minutes to speak with their clients.

1          Mr. Bauer.

2          DEFENDANT VASSALL:  Excuse me.

3          THE COURT:  I'm going to give your lawyers an

4    opportunity to speak with you, and then I'll come back out.

5          MR. BAUER:  The one other consideration, your Honor,

6    is that the government is intending to supersede the indictment

7    before trial.  The main purpose of the superseder is to extend

8    the time frame of the narcotics conspiracy and the

9    corresponding 924(c) charge.  We have developed a significant

10   amount of cooperator information as well as a number of prior

11   arrests of these defendants that would support that.

12         Let me step back.  The plan was to supersede before

13   today.  Because it was going to be two months before trial, we

14   thought that would be more than enough time to allow defense

15   counsel to prepare.  Defense counsel was in touch with your

16   chambers a number of times as well as with the government

17   stating that they were going to be requesting that the November

18   trial date be moved, so the government has not superseded.  It

19   could relatively quickly if the Court is inclined to keep the

20   November date.  I just wanted that to be on the record, that

21   our goal is to supersede approximately two months before any

22   trial date.

23         The other relevant piece of that is that I don't think

24   it requires any new discovery from the government.  We have

25   turned over all the prior arrest reports.  For the most part,

 1    the remainder of the proof that would support these new charges

 2    would be cooperator testimony that, of course, as you just

 3    ruled, has not been disclosed anyway yet.

 4            MR. GOLTZER:  I very much appreciate the Court

 5    accommodating Mr. Whitaker's appellate schedule.  I am

 6    wondering whether the Court is going to grant our motion

 7    formally for a stay of these proceedings pending the

 8    determination of that appeal.

 9            THE COURT:  Yes, I am going to go ahead and grant a

10    stay of the November 4th date.

11            MR. GOLTZER:  Thank you.  I assume Mr. Whitaker will

12    not be party to further proceedings or arraignment until that

13    appeal is decided?

14            THE COURT:  Correct.  Is there a reason why he

15    couldn't be arraigned on the superseding indictment?

16            MR. BAUER:  I will note for the record, your Honor,

17    that the superseding indictment was returned before Mr. Goltzer

18    filed his appeal, which is the reason why I think it might be

19    appropriate to have him arraigned.

20            MR. GOLTZER:  I think it defeats the purpose of the

21    statute, which is to maintain his privacy interest and

22    confidentiality of juvenile proceedings.  So I think it is

23    probably prudent not to do that.  There is no speedy trial

24    issue, because we have filed an appeal.  I think it is probably

25    prudent.  We will do what we can not to be tardy on the appeal.

1    If we lose the appeal and the Court sets a trial date, we'll be

2    there.

3            THE COURT:  I would expect, Mr. Goltzer, that you will

4    be prepared, that you will continue to purposefully and

5    assiduously move forward in connection with your trial

6    preparation assuming that the circuit upholds.

7            MR. GOLTZER:  No problem.

8            MS. MARCUS:  Your Honor, we do have a couple of

9    specific requests to make insofar as discovery is concerned.

10   We were made aware that there were statements that the

11   government has given to other defendants but not to us from a

12   cooperator who made statements when the cooperator was

13   arrested, identifying certain people involved in the case.

14           Our client was specifically not identified.  This was

15   soon after the arrests.  That would be an example of

16   exculpatory information, helpful information, that the

17   government has that has not yet been turned over, at least to

18   Mr. Williams.  They are about an informant who was mentioned at

19   the last court appearance.

20           We also would ask your Honor under the rule for

21   purposes of severance on the statements.  But I want to be

22   clear.  We would like an opportunity to still argue that the

23   statement of Mr. Burden would not be admissible if there were

24   to be a joint trial, because there are Bruton violations within

25   it.  We haven't broached that yet.

1          THE COURT:  Right, absolutely not.  The government has

2     indicated that it will Brutonize a statement prior to it being

3     presented to the jury.  It will have to be presented to the

4     Court and will be provided to defense counsel for comment.

5          With respect to the other piece of discovery, Mr.

6     Bauer?

7          MR. BAUER:  Judge, I frankly don't know what Ms.

8     Marcus is referring to.  I will say that the government has

9     shown the photographs of each of the defendants to a number of

10    cooperating witnesses and none of the cooperating witnesses are

11    alike.  The fact that one of them didn't recognize one of the

12    defendants, I don't see that as Brady.  I think it falls in

13    light of Giglio.

14         To the extent that it was somebody who was central to

15    the facts here and it suggested Mr. Williams's innocence, that

16    is obviously a different story.  But simply that a witness who

17    we showed a photograph or otherwise mentioned Mr. Williams'

18    name who didn't recognize Mr. Williams, (a) I don't know what

19    is being referred to, and (b) I don't recall turning that over

20    to other defense counsel.  (c), nevertheless, I don't see that

21    as a Brady violation.

22         THE COURT:  I don't see that I see the Brady violation

23    there, either, Ms. Marcus.  It is not unusual, I suppose, for

24    the government to customize discovery to defendants in

25    multidefendant cases concerning statements that apply

33

1    specifically to their clients.  Again, since Mr. Bauer appears

2    not to have an understanding of what statements you are

3    referring to, perhaps you two can talk about it.  If you need

4    to make further application, I am happy to receive it.

5                MR. BAUER:  Thank you.

6                THE COURT:  Ms. Marcus?

7                MS. MARCUS:  With the government's assertion that they

8    are going to supersede the indictment, the government has

9    mentioned it is possibly going to include acts outside the time

10   frame of this particular indictment.  We don't have discovery

11   related to any acts that our client would have committed

12   outside the time frame of this.

13               MR. BUCHWALD:  Could we be at least told what time

14   frame we are talking about?  And I would hope that this is not

15   a request for permission, even though they are ready to indict,

16   to wait until two months before the new trial before the

17   defendants know what the new charges are.  That seems to me to

18   be patently unfair if they were ready to indict already.

19               MS. MARCUS:  I'll speak with the government.

20               THE COURT:  Mr. Buchwald essentially, as I understand

21   it, says if you are ready to indict or supersede, what time

22   frame are you asking about or are you talking about expanding

23   to, and why not just go ahead and supersede if you are ready to

24   do so rather than wait until two months before trial?

25               MR. BAUER:  It's a fair question, your Honor.

1    Respectfully, as long as defense counsel has enough notice to

2    prepare for trial, I think it is a prosecutorial strategy

3    decision or discretionary decision that is reserved for our

4    office.  That being said, I am in no way trying to stand in the

5    way of defense counsel preparing for trial.  If it pleases the

6    Court, once a final trial date is determined, I am happy to

7    make a representation to the Court, either by letter or

8    otherwise, of our intention of the date which we will supersede

9    by.  If any defense counsel has an objection, they can raise

10   it.

11          MR. BUCHWALD:  Part of the question is what is the new

12   time frame of the conspiracy that you are planning on

13   superseding whenever it is that you supersede?

14          MR. BAUER:  That is one of the things actually that I

15   haven't honed in on.  He can laugh, thank you.  It is in the

16   years directly preceding and directly after.  Whatever.

17          MR. GOLTZER:  Is it this century?

18          MR. BAUER:  Yes.

19          MR. GOLTZER:  Thank you.

20          THE COURT:  Mr. Moskowitz.

21          MR. MOSKOWITZ:  There is the issue of the Brutonized

22   statement.  We are talking about a tape that is several hours

23   long.  It seems to me to make sense that if the government has

24   a proposal as to how they intend to Brutonize the statement,

25   that defense counsel get that earlier rather than later,

1    because it is going to raise a lot of issues.

2         I know some of my co-counsel may want all or part of

3    that tape out.  I suggest to the Court we may have other

4    interests in having all of the tape in or different parts of

5    the tape in than what the government proposes or what my

6    co-defense counsel want.

7         I think these may raise complicated issues for the

8    Court that may also raise severance issues because of my

9    client's need to use the tape which may not otherwise be

10   admissible.  That is an issue we can tee up earlier so the

11   Court can have it, we can have it.  It may impact on how this

12   case goes to trial.

13        MR. BAUER:  Judge, here is my proposal.  After today

14   it sounds like you are going to make a decision of when the

15   trial date is.  The parties will then consult via phone

16   conference or get together in person.  Then we will work

17   together and propose a date for the various disclosures.

18        What Mr. Moskowitz is saying is not wrong.  We are

19   willing to work with defense counsel, especially for that one

20   particular issue.  It seems a little premature.  Let's get a

21   trial date, and then we will work out these other dates

22   afterwards.

23        THE COURT:  That's fine.  Again, I know nothing about

24   the discovery in this case and I know nothing about this tape.

25   I don't know how long it is, I don't know who all is mentioned.

1    Certainly I am sure the government understands this and

2    appreciates this.

3            If there is a particular piece of evidence that is

4    going to raise particularly thorny issues and that may result

5    in severance because of the various decisions of the various

6    parties, obviously I will want to know that sooner than later,

7    and I would want to have those issues determined as early as

8    possible so that everyone knows how the trial is going to play

9    out.  Again, you know your discovery better than I do.  Comport

10   yourself accordingly.

11           What I will do now is get off the bench and allow

12   counsel to speak with their clients.  As soon as you are ready

13   to have me back, just holler, and I'll run back in.

14           To the marshals, if there are defendants who do not

15   wish to raise any particular issue and don't want to be here,

16   they can be excused.

17           MR. BUCHWALD:  May I address two other discovery

18   matters, your Honor?

19           THE COURT:  Sure.

20           MR. BUCHWALD:  In the correspondence that went back

21   and forth between some co-counsel and the prosecution, I

22   believe the prosecution made available to Mr. Cohn, which would

23   be Mr. Patel, some statement that was the subject of

24   correspondence back and forth which I don't have and I don't

25   think the other counsel have and which we would appreciate

1    getting.  It was an order to show cause.  Wasn't there

2    somebody's statement?

3              MR. PATEL:  Yes.

4              MR. BUCHWALD:  Can we get it, too?

5              MR. PATEL:  Yes.

6              MR. BUCHWALD:  That answers that.

7              THE COURT:  OK.

8              MR. BUCHWALD:  In addition, Mr. Bauer just made

9    reference to photographs have been shown to witnesses or

10   prospective witnesses of the defendants, some of whom did not

11   pick out the photograph, if I was hearing it correctly.  I'm

12   not aware of having been advised of that before.

13             I do think that there has to be discovery made

14   available of any kind of photographic identification, whether

15   it was photographic identification or a lineup identification,

16   so that we have an opportunity to challenge it if we think

17   appropriate.  I was not aware of any kind of identifications,

18   out-of-court identifications.

19             I would ask Mr. Bauer to reflect on that and make the

20   appropriate disclosures and leave of Court if we think that

21   motion practice is appropriate with respect to that issue, to

22   pursue such motions.

23             THE COURT:  OK.  Was there any evidence of photo

24   arrays provided?

25             MR. BAUER:  Not the photo arrays, your Honor.  It is a

1    big binder full of lots and lots of pictures.  The existence of

2    the binder, I thought we did.  If we didn't, I will talk to

3    defense counsel as well.  It is one of the standard ways that

4    the government shows pictures of potential suspects to

5    witnesses.  If I omitted that information in any of my

6    disclosures, it was not intentional, and I'm happy to work with

7    defense counsel and show them the book if they like.

8            MR. BUCHWALD:  More specifically, to the extent that

9    one failed to make identification, I think that is relevant,

10   too, certainly if it is going to be a government witness.

11           MR. BAUER:  We will take that under advisement, Judge.

12   Right now sitting here today, whether any government witness

13   has failed to identify, for instance, Mr. Thomas, I think the

14   answer to that is no, standing here today, but I don't know.

15           THE COURT:  OK.

16           MR. BAUER:  Judge, last thing.  Speedy Trial Act.  I

17   think time under the speedy trial clock was excluded until

18   November 4th.  Now that you have stayed that date, I don't know

19   in that exclusion still applies.  May I suggest that we set a

20   control date and that you exclude time between now and that

21   control date.

22           THE COURT:  Certainly.  When do the parties want to

23   come back?

24           MR. BAUER:  It may very well depend on the trial date

25   that you select.  Shall keep November 4th as a control date?

1          THE COURT:  I'm happy to keep November 4th.

2          MR. BAUER:  Some people can't make it, right?  OK.  So

3  if we can keep November 4th as a control date, then I would

4  move again to exclude time between now and then to sort out all

5  the various issues we have discussed.

6          MR. BUCHWALD:  We would also ask that Mr. Bauer give

7  all of the defense attorneys who it hasn't given it to, the

8  tape, the Mallory-Burden tape.  I believe you inadvertently

9  indicated in the papers that you submitted that that was given

10  to all counsel when it was in fact given to only Mr. Burden's

11  attorneys and Mr. Williams' attorneys.  You are going to give

12  it to everybody else?

13          MR. BAUER:  I did.

14          MR. BUCHWALD:  Not the Mallory-Burden tape.

15          MR. BAUER:  These are things that can be easily

16  resolved amongst the parties.  This is the first I'm hearing of

17  that.  In terms of the date on November 4th, because Mr.

18  Williams is in Putnam County, I suggest we do it after 11 a.m.

19  to give the marshals time to get Mr. Williams here.

20          THE COURT:  If we can accommodate you in the

21  afternoon, I am happy to accommodate you in the afternoon.

22          THE CLERK:  November 4, 2:15.

23          MR. PATEL:  Your Honor, there is one disclosure issue,

24  for lack of a better word.  I bring this question to your

25  Honor's attention, and I'm not sure what the appropriate date

1    is.  The government often turns over the criminal history

2    reports of cooperating witnesses when they turn over the 3500

3    material.  Criminal history reports are not in fact 3500

4    material.  The problem with that late disclosure is often some

5    of those records which lead to additional records are sealed,

6    and it takes time to get those.  If we could get that 45 days

7    before whatever trial date your Honor sets under whatever

8    protective order the government is comfortable with so that we

9    can adequately prepare for trial, that would be very helpful.

10            THE COURT:  Mr. Bauer?

11            MR. BAUER:  Again, think these dates are a little

12   premature.  I think the parties should discuss and then make a

13   joint proposal to you on these disclosure dates after a trial

14   date is set.  I have some reservations about what Mr. Patel has

15   just proposed.  Rather than continue to talk about it here now

16   in the abstract, why don't we talk about specific dates and

17   make a proposal to you.

18            THE COURT:  That makes sense.  Why don't we take a

19   couple of minutes, and I will be available for you as soon as

20   you need me.

21            (Recess)

22            THE COURT:  Is there anything that the parties want to

23   bring to my attention?

24            MS. MARCUS:  Yes.  Mr. Williams, your Honor, has

25   several things that he would like to bring to your attention.

 1    He would like to make it known to your Honor that Parvin Moyne

 2    has been coming and dressing up as a member of the defense team

 3    and visiting him, and he has made a request to Eric Holder to

 4    investigate this.  He has gotten a response from the justice

 5    department, and the justice department said they don't handle

 6    individual cases.  He has a newspaper article that says this is

 7    not the case, where they have investigated individual cases.

 8          He also said on September 5th, at his arraignment,

 9    that Parvin Moyne made an allegation that Kevin Burden and

10    James Williams were passing out guns at his residence and that

11    it is different from the evidence that is being presented now.

12          THE COURT:  Thank you.

13          MS. STERNHEIM:  Your Honor, I had the opportunity to

14    speak to Mr. Christian about my unavailability for trial after

15    a December date.  Mr. Christian is amenable to the Court

16    appointing substitute counsel for me, with Mr. Strazza

17    remaining on the team.  I will make myself available for any

18    transition and to fully bring new counsel up to date.

19          THE COURT:  Thank you.

20          MS. STERNHEIM:  Also, one other thing.  I had brought

21    this to the attention of government counsel.  Mr. Christian was

22    recently transferred from Westchester County jail to the MCC,

23    but none of the discovery that had been provided to him has

24    followed.  I have requested that the government prepare a

25    duplicate copy for production at the MCC, and they have agreed

```
 1   to do so.
 2             THE COURT:  Thank you.
 3             MR. BAUER:  It is my understanding that everybody got
 4   moved from Valhalla who was there today or yesterday.  I think
 5   the problem is going to be common to all defendants.  Mr.
 6   Burden raised the same issue.  The government is prepared to
 7   re-produce to all defendants who are now at MCC another copy of
 8   their discovery.
 9             THE COURT:  Very well.  Thank you.
10             MS. MARCUS:  I forgot, but Mr. Williams had the same
11   problem, that he is not receiving his legal property in Putnam.
12             THE COURT:  Was Mr. Williams also moved?
13             MS. MARCUS:  No. he is still at Putnam.
14             MR. BAUER:  We have produced his discovery I think
15   five times now.
16             DEFENDANT WILLIAMS:  I didn't get it.
17             MR. BAUER:  If you recall, Mr. Williams did not trust
18   the source of some of the mailings that we had done, so he
19   refused to open them.  At this point, absent a court order, I
20   think the government has satisfied its Rule 16 obligations for
21   Mr. Williams.  Again, if the Court says we should, then we
22   should, but otherwise I don't think it is necessary for the
23   government to produce another copy.
24             DEFENDANT WILLIAMS:  Your Honor, I never refused to
25   open no copy of my discovery.
```

```
 1              THE COURT:  Mr. Williams, please.

 2              DEFENDANT WILLIAMS:  It came open.

 3              THE COURT:  Have you received that discovery back from

 4   the facility or is the facility holding on to it in some

 5   fashion, if you know?

 6              MR. BAUER:  That issue was at the MCC, I believe.

 7   Yes, there was an exchange.  I think Mr. Williams received, as

 8   he said, an open letter, legal mail.  They open it as a matter

 9   of course at MCC.  He didn't want that one.  They sent that

10   back, and we sent him one that I think was sealed.

11              DEFENDANT WILLIAMS:  They are supposed to open and

12   sign it.  I was supposed to sign it.  They told me I could not

13   sign for my legal mail.  Therefore, I refused it because I

14   thought it was simple instructions.  I also haven't received my

15   legal mail from MCC yet after being left there for six months.

16   I haven't received my money from MCC or my legal property from

17   MCC.

18              THE COURT:  Mr. Williams, that will be enough.

19              MS. MARCUS:  I am in touch with Adam Johnson, who is

20   the lawyer at MCC, and Sergeant Hanley at Putnam.  I will work

21   with both of them to make sure --

22              DEFENDANT WILLIAMS:  It's been a year now that I

23   haven't received my property, a year.

24              THE COURT:  Thank you.  Anything else, Mr. Patel?

25              MR. PATEL:  Purely a scheduling matter.  If your Honor
```

1    sets an April trial date, I have spoken with Mr. Vassell, and I

2    would ask that new counsel be assigned.  I would of course do

3    everything I can to make sure that new counsel is up to speed

4    as quickly as possible.

5           THE COURT:  Thank you.  Anything else?

6           MR. BAUER:  On the counsel issue, I would remind the

7    Court there are a number of conflicts, so I am going to ask if,

8    that is the route that we go, that you consult with the

9    government before assigning anyone.

10           THE COURT:  If we set an April trial date, are Mr.

11   Patel and Ms. Sternheim the only counsel that cannot make it?

12           MR. DRATEL:  I cannot, your Honor.  March 31 I have a

13   trial.

14           THE COURT:  If we set an early February trial date,

15   who cannot make it besides Ms. Sternheim and Mr. --

16           MR. MOSKOWITZ:  Mr. Ginsberg.

17           THE COURT:  You can make it, Mr. Moskowitz?

18           MR. MOSKOWITZ:  I can make it, Judge.

19           MR. BUCHWALD:  I cannot, your Honor.  Mr. Dratel is

20   here.

21           THE COURT:  You two are a team in this case?

22           MR. BUCHWALD:  Yes.

23           THE COURT:  One or the other of you can make it if we

24   set it in February?

25           MR. DRATEL:  Yes, your Honor, I can do that.

 1          THE COURT:  Anything further?

 2          MR. BAUER:  Last thing, Judge.  We set the November

 3   4th control date.  I don't think you excluded time.  The

 4   government would request that you do so now.

 5          THE COURT:  Any objection?

 6          MR. BUCHWALD:  Yes, your Honor.  On behalf of Mr.

 7   Thomas, we object to any exclusion under the Speedy Trial Act

 8   beyond what -- I'm sorry.  Was this just through November 4th?

 9          THE COURT:  Yes.

10          MR. BUCHWALD:  I think we objected back then, so we

11   would continue to object.

12          THE COURT:  Over the objection of your client, I am

13   going to exclude the time period between now and November 4

14   under the Speedy Trial Act.  I find that the interests of the

15   defendants continuing to talk with the government about

16   discovery issues that were put on the record today and speaking

17   with the government about the government's anticipated

18   superseding indictment outweigh the interests of the defendants

19   and the public in a speedy public trial.  Accordingly, the time

20   between now and November 4 will be excluded.

21          Anything further?

22          DEFENDANT VASSALL:  Excuse me.  I want to file charges

23   against the prosecution for manipulating and coming to me

24   posing as my attorney Susan.  I made this note to Judge Ramos

25   early last year, earlier in the year, and by letter unbeknown

1    to him about these events.

2              THE COURT:  Mr. Williams, I am sure that your lawyers

3    are very well aware of your concerns and they will make the

4    appropriate applications at the appropriate time.  Believe me,

5    your concerns have been placed on the record.  They have been

6    placed on the record numerous times.

7              DEFENDANT VASSALL:  Is there anything that the courts

8    can do?

9              MR. JASPER:  Judge, we will take it up.

10             DEFENDANT VASSALL:  I want to know if there is

11   anything that this man can do being that he has stepped up to

12   maintain order.  I want to make sure I get a fair trial.  The

13   prosecution is coming to me posing as my attorney.  That is a

14   federal offense, specially after 911.  It affects my

15   co-defendants as well.

16             THE COURT:  We are adjourned unless there is anything

17   further.

18             (Adjourned)

19

20

21

22

23

24

25