E3ECCHRC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                        12 CR 626 (ER)
   RAYMOND CHRISTIAN, GLENN
5  THOMAS, TYRELL WHITAKER,

6

                   Defendants.
7
   ------------------------------x

8
                                        New York, N.Y.
9                                       March 14, 2014
                                        4:30 p.m.
10

11  Before:

12                     HON. EDGARDO RAMOS,

13                                      District Judge

14
                        APPEARANCES
15
   PREET BHARARA
16       United States Attorney for the
         Southern District of New York
17  KHAN NOWADAY
   ANDREW B. BAUER
18       Assistant United States Attorney

19  DAVID S. GREENFIELD
         Attorney for Defendant Raymond Christian
20
   DONALD D. BUCHWALD
21       Attorney for Defendant Glenn Thomas

22  GEORGE R. GOLTZER
         Attorney for Defendant Tyrell Whitaker
23

24

25

E3ECCHRC

1          (Case called)

2          MR. NOWADAY:  Good afternoon, Khan Nowaday and Andrew

3     Bauer, for the government.

4          MR. GREENFIELD:  David Greenfield for Raymond

5     Christian, seated in the box closest to you.

6          MR. BUCHWALD:  Don Buchwald, for Glenn Thomas, who is

7     seated closest to me.

8          MR. GOLTZER:  George Goltzer, for Mr. Whitaker, who is

9     not present.

10         THE COURT:  Good afternoon to you.  Good afternoon to

11    you, Mr. Christian and Mr. Thomas.

12         I apologize, Mr. Goltzer, we have not seen your

13    letter.

14         MR. GOLTZER:  It was not a letter from me.  I got an

15    e-mail that Ms. Stafford sent a letter requesting Mr. Whitaker

16    be excused.  We saw him yesterday.  He was somewhat depressed.

17    Today is his birthday.  He asked that he not be required to sit

18    all day in a cell.  We told him it was simply a calendar matter

19    and we would ask the Court to excuse him.  Ms. Stafford said

20    she would send in a letter.  I don't have the letter.  I have

21    an e-mail from her to Mr. Bauer indicating that she had sent a

22    letter to the Court at around 5:00.  I don't know anything more

23    than that.  I'm sure if she said she did, she did.  I would

24    request that Mr. Whitaker be excused today.

25         THE COURT:  I take it there is no objection.  Were you

E3ECCHRC

1    cc'd on the letter?

2             MR. NOWADAY:  We have not.  But we have no objection.

3             MR. GOLTZER:  They got an e-mailed today.  I apologize

4    for it not being cc'd.

5             THE COURT:  Mr. Goltzer, what can you tell me about

6    the status of your appeal?

7             MR. GOLTZER:  The government made the motion to

8    expedite the appeal which we did not object to.  It's being

9    submitted to a panel on the 2nd of April.  I expect, hope, that

10   we will have a decision before the scheduled trial date, which

11   I understand may now be problematic for assorted reasons.

12            THE COURT:  If one of the government lawyers can clue

13   me in, did you ask for an expedition of the argument?  Has the

14   argument been held?

15            MR. GOLTZER:  We are submitting it.  It's in a

16   submission calendar on April 2.

17            THE COURT:  Thank you.

18            I guess we are here, Mr. Greenfield at your request.

19            MR. GREENFIELD:  I wrote the letter, Judge.

20            THE COURT:  Tell me what's going on.

21            MR. GREENFIELD:  Mr. Buchwald is on trial in another

22   matter.  That trial, it's for more Mr. Buchwald to tell you.

23   My impression was it was to run through the April 21st date,

24   that his case was going to last through then.  Mr. Bauer was

25   the individual who informed me of that when we had a

E3ECCHRC

1   conversation regarding another matter.

2            Mr. Buchwald can tell you more as to where it stands

3   with his case, but I have certain things that I would like to

4   put before the Court also.

5            THE COURT:  Tell me what your concerns are.

6            MR. GREENFIELD:  Fine, Judge.  As the Court is aware,

7   I didn't come into the case until December 12.  Taking

8   Ms. Sternheim's spot because of her prior commitments.  Trying

9   to get up to speed as quickly as I could, going through all

10  that was turned over to me, it became apparent that DNA was

11  going to be a real issue in the case.  On February 11,

12  Mr. Strazza, on behalf of Mr. Christian, wrote a letter to the

13  government requesting -- let me refer to the letter, that the

14  government turn over to us all records, notes, worksheets,

15  statistical calculations, photographs, including a complete

16  chain of custody printout for each item that was tested for

17  DNA, and any number of other things.  It was a two-page letter

18  sent to the government.

19           Mr. Bauer has told me that he's made any number of

20  requests from the New York State police laboratory, I think

21  that's the appropriate agency, to turn the stuff over to him so

22  it could be turned over to us because a mere conclusion that my

23  client's DNA was found at a certain location is fine for a

24  conclusion.  I want to see the basis for it.  I want to have an

25  expert review those documents, those reports, those worksheets,

E3ECCHRC

1    those calculations, the chain of custody, anything else which

2    is important to determine whether or not we want to challenge,

3    pretrial, the DNA findings or make any motions to the

4    conclusion.

5         THE COURT:  I will stop you for a second.  I'm not

6    involved in the discovery.  Has it been represented to you by

7    the government that there has been an identification of your

8    client being at a particular place through his DNA?

9         MR. GREENFIELD:  His DNA was found at the scene of the

10   crime.

11        THE COURT:  The government told you this?

12        MR. GREENFIELD:  Yes.

13        THE COURT:  You received the reports concerning that?

14        MR. GREENFIELD:  Yes.  Just a conclusory report, that

15   which backs it up -- not that a match was found, something

16   consistent was found to my client's DNA, so it's something less

17   than a match.

18        We requested all of that backup paper to be produced

19   and the government has told me they are making efforts, but I

20   think it's better for them to describe to Court what they think

21   is happening or not happening with regard to that.  Clearly,

22   Judge, those are reports we are entitled to under Rule 16 and

23   certainly those reports we should have in our possession to

24   determine if any motion practice might lie.

25        THE COURT:  Mr. Bauer or Mr. Nowaday.

E3ECCHRC

1            MR. NOWADAY:  Yes, your Honor.  First off, we did

2      receive the letter from Mr. Greenfield and Mr. Strazza.  We

3      actually met with Mr. Strazza and Mr. Greenfield to go through

4      their requests.

5            Your Honor is correct, first off, that we have

6      provided the notice that there was a DNA match; also, the lab

7      reports that show that DNA conclusion.  Mr. Greenfield and

8      Mr. Strazza have asked for the underlying work product, and we

9      are happy to provide it.  We have asked the New York State

10     trooper lab to provide us those materials.  It's my

11     understanding they are getting them.  It's my understanding is

12     what may have happened was the original file was sent to an ADA

13     up in Albany.  They are trying to get that file to us.  I will

14     call again today and we will get these materials to

15     Mr. Greenfield and Mr. Strazza.  I would also point out that

16     our expert notice deadline date is actually March 21.  We still

17     have some time.

18            Again, the last thing I would like to say on this

19     topic is the materials they are asking for are basically kind

20     of the work product.  We are happy to provide it.  In our view

21     it's more like 3500 material, but we are happy to provide it

22     because if they want to hire an expert themselves, they are

23     welcome to do that.

24            THE COURT:  When did all of this take place, the

25     letter from Mr. Strazza, your meeting and request?

E3ECCHRC

1          MR. GREENFIELD:  February 11 is when the letter went

2      out.

3          MR. NOWADAY:  I think we met with Mr. Greenfield or

4      Mr. Strazza, what was it the next week or the week after that?

5      I think in late February.

6          THE COURT:  The file was sent to an ADA in Albany by

7      mistake?

8          MR. NOWADAY:  No, your Honor.  That DNA match

9      essentially came from a swab taken from Mr. Christian from a

10     separate arrest.  Basically, you have the DNA from one of the

11     ski masks recovered at the scene of the murder.  That DNA was

12     tested.  Those lab reports were provided to defense counsel.

13     Then the actual match was done from a swab with DNA from a swab

14     taken from Mr. Christian in a separate arrest that was

15     prosecuted by the state.

16         THE COURT:  By the state where?

17         MR. NOWADAY:  I believe in Orange County.

18         THE COURT:  It may not matter, but why was it sent to

19     an ADA in Albany?

20         MR. NOWADAY:  Some those files related to that swab.

21     I actually don't know the answer, your Honor.

22         MR. GOLTZER:  It's a central repository when DNA is

23     taken after a conviction, and very often they will send the

24     numerical references to the low side to Albany to see if it

25     fits within a database.

E3ECCHRC

1          MR. NOWADAY:  In any event, we are endeavoring to get

2     the file, and we will provide those materials.

3          THE COURT:  Can you provide any inkling as to when you

4     might get those materials?

5          MR. NOWADAY:  We will endeavor to get them next week,

6     and in advance of the March 21 date when we have to provide

7     expert notice, we will have provided it.

8          MR. GREENFIELD:  It's also Rule 16.  We should have

9     received this a long time ago.  But the fact is I didn't make

10     the request until February 11.  It was a timely request.  We

11     are not talking about their obligation to turn it over by a

12     certain date.  We are talking about my job in preparing for

13     trial for my client and getting ready as best I can and the

14     need to have those documents reviewed by an expert.  Every day

15     that passes is causing more and more problems for the defense

16     in this case.

17          THE COURT:  As I understand it, Mr. Greenfield, tell

18     me if I'm wrong, the information and report that you received

19     was that the results of the testing was that the DNA received

20     or tested was consistent with an identification of

21     Mr. Christian?

22          MR. GREENFIELD:  Yes, Judge.  There were a number of

23     swabs taken at the crime scene.  Only one swab relates to my

24     client.  There are a number of other swabs that were consistent

25     and/or matches that relate to other people, both in and out of

E3ECCHRC

1    the case.  Certainly, I would like to see the basis for the

2    decision-making process.

3              THE COURT:  There appears to be no dispute that you

4    should get that information or that you will get that

5    information just as quickly as the government can get it.  If

6    you don't receive it by the end of next week if you want to

7    make any further application, I'm happy to consider it.

8              MR. GREENFIELD:  Further, Judge, there were latent

9    prints that were recovered at the scene of the crime back in

10   December of 2010.  We have never received any lab reports or

11   any sort of police reports with regard to these latent prints.

12   There were over 20-some-odd prints that I count that much

13   recovered by the police department at the scene of the crime.

14   That's clearly Rule 16 material.  We haven't seen the results

15   of any of those tests.

16             Same is true for ballistics reports.  I know there was

17   ballistics found at the scene of the crime.  We have not

18   received one report with respect to that.

19             We have not received any crime scene reports at the

20   scene of the crime.  I also believe there were at least one

21   diagram that was prepared the night of the murder.  We have not

22   received that either.  All Rule 16, Judge.  All important in

23   determining what the defense is going to be, what the defense

24   shouldn't be, how we could put our best foot forward during the

25   course of the trial.

1          THE COURT:  Crime scene forensic material would seem

2     to be Rule 16 material.

3          MR .BAUER:  Agreed, your Honor.  At the time we turned

4     over Rule 16 a year and a half ago now, we turned over what I

5     will -- to use Mr. Greenfield's term, conclusory reports, but

6     there were other documents which we did not endeavor to get at

7     that time.

8          As soon as Mr. Greenfield made the request for these

9     documents, literally that day, I got in touch with the ADA who

10     had the file for the case, and together, we -- I'm sorry.  The

11     first thing I did, Mr. Nowaday and I went up to Orange County

12     and looked to see what if there was that we didn't have.  When

13     we realize that the Newburgh and F.B.I. didn't have the

14     fingerprint and ballistics reports, I drafted an unsealing

15     order.  I can tell you the unsealing order it was in the

16     District Attorney's files and -- they said we needed an

17     unsealing order.  That unsealing order was signed by a state

18     judge yesterday.  My understanding is F.B.I. agents are at the

19     DA's office today making photocopies.  That, even more so than

20     the DNA, I'm confident that we will be able to turn over

21     sometime next week.

22          THE COURT:  The other materials, the ballistics and

23     any drawings that were made of the crime scene.

24          MR .BAUER:  All in the same category.  I will be

25     clear.  If it exists, we will turn it over.  I'm not sure

E3ECCHRC

1    frankly what exists in terms of the fingerprints.  I have been

2    told that everything would be in this file that we have now

3    unsealed and F.B.I. are copying, I think, literally today.

4    That includes the ballistics and the crime scene diagram and

5    things like that.

6              MR. GOLTZER:  May I jump in for a moment?

7              THE COURT:  Absolutely.

8              MR. GOLTZER:  Thank you.

9              Although it's my understanding that Mr. Whitaker was

10   not identified as someone who left any of these samples behind

11   him by way of fingerprints or DNA, to the extent that the

12   absence of his evidence of his presence and the presence of

13   specimens from other potential suspects might be Brady

14   material, it appears to me the prosecution and the government

15   agencies, whoever they may be, under *Kyles v. Whittley* and the

16   like, are under obligation to have preserved evidence of the

17   presence of other individuals fingerprints.  It's just not

18   enough to say that we will give you what we have.  I think they

19   really ought to make some effort to find out what did exist and

20   if it's not available now, what happened to it, report to the

21   Court, let us know and then we can make further applications

22   should that be necessary.

23             I would like to go on record to join any applications

24   for forensic evidence made by cocounsel on the grounds stated.

25             MR. GREENFIELD:  There is no doubt, Judge, that at a

E3ECCHRC

1    minimum 26 latent fingerprints were found at the scene of the

2    crime and taken into custody by the Newburgh Police Department.

3    We know that for a fact.  I believe it's much more.  If they

4    had the fingerprints, they certainly didn't flush them the next

5    day.  They went into the system.  There have to be reports as

6    to they are identified, not identified.

7              THE COURT:  I guess I don't know that there is a

8    reason to fight over all of this.  You know for sure there were

9    26 latent fingerprints lifted.

10             MR. GREENFIELD:  Minimum.

11             THE COURT:  You know this how?

12             MR. GREENFIELD:  In the chain of custody provided by

13   the government in Rule 16 discovery, one of the reports said 26

14   latent fingerprints were recovered and put into the chain of

15   custody.

16             MR .BAUER:  It has been turned over pursuant not only

17   to Rule 16, but also our Brady obligations.  We have already

18   turned those over.  I have seen those fingerprint collections

19   when we went to the F.B.I. offices last week.  They have been

20   preserved.  Whether there have been reports done on all 26,

21   that's what I don't know.  There is no reason to fight about it

22   now.  Let's see what there is.  If defense counsel has a

23   problem with what we turn over, then we will go from there.

24             THE COURT:  Okay.

25             MR. GREENFIELD:  Can I suggest, let's see what happens

E3ECCHRC

1   in the next couple days, and maybe we come back here and a week

2   and report to the Court.

3          THE COURT:  Sure.  Let's see what the government turns

4   over by the end of next Friday.  If you have any

5   dissatisfaction or any questions, you can make whatever

6   applications that you deem appropriate.  Okay?

7          MR. GREENFIELD:  That is fine, Judge.

8          THE COURT:  Is that it on discovery?

9          Mr. Buchwald, what is your situation?

10          MR. BUCHWALD:  I started trial in front of Judge

11   Engelmayer, United States v. Urena and Vasquez on March 10.  It

12   was estimated to be three to four weeks.  Shortly before the

13   trial began, the estimate increased to four to six weeks in the

14   government's proposed jury voir dire.  I think it will be

15   finished within the six weeks.  Judge Engelmayer has what

16   elderly an CJA counsel would describe as a brutal schedule,

17   9:00 to 5:00.  I think your Honor may share in that schedule.

18          THE COURT:  I'm 9:30 to 5:00.  I'm nicer than Judge

19   Engelmayer.

20          MR. BUCHWALD:  I think it will be concluded within six

21   weeks.  Mr. Bauer, I think, has spoken to the prosecutors and

22   feels it may go closer to eight weeks.  Obviously, I can't be

23   in two places at once.  I would have liked a break.  But I have

24   spoken to Mr. Thomas.  Mr. Thomas doesn't want to consent to

25   any adjournment and however much, for my personal standpoint, I

E3ECCHRC

1    would prefer to have a delayed trial date, Mr. Thomas's desires

2    are paramount.  That's the position we take.

3         THE COURT:  My question is what happens if you are

4    actually engaged in front of Judge Engelmayer at the time that

5    we are scheduled to start?

6         MR. BUCHWALD:  Even though both courtrooms are in the

7    same building, I think it would be very difficult for me to

8    participate.  It's conceivable that the other jury may be out

9    and I would be here.  If there are notes and things, we can

10   make adjustments.

11        THE COURT:  Mr. Bauer, have you had such discussions

12   with those prosecutors?  Can you provide this court with any

13   insight as to what might happen before Judge Engelmayer?

14        MR .BAUER:  I have not been in the courtroom, but Mr.

15   Buchwald has.  I have spoken to the prosecutors.  They are one

16   week into trial.  They are still on their first witness.  They

17   have told me it's more realistic it will be closer to eight

18   weeks.  We are concerned.  We don't want to adjourn the trial.

19   But we also don't want to be in the position it's April 18 and

20   Mr. Buchwald reports in that he still has two more weeks of

21   trial.

22        We are between a rock and a hard place.  Based on our

23   understanding, the information provided to us from the

24   prosecutors who are the ones in charge of presenting the case,

25   they think it will go well into the beginning of our trial.

E3ECCHRC

| 1  | THE COURT:  What is the nature of that trial? |

1    THE COURT:  What is the nature of that trial?

2    MR .BAUER:  A murder RICO trial.

3        MR. BUCHWALD:  RICO drug conspiracy, several

4    homicides, two defendants.  It's considerably more complex case

5    than this one here.  Similar in nature, but more of it.

6        MR .BAUER:  I don't have a suggestion for you, your

7    Honor.  But I had suggested to Mr. Greenfield that we get

8    before you as soon as possible to address this.

9        MR. BUCHWALD:  I should just mention, on the other

10   side of it, I have a trial scheduled on May either 11 or 12

11   before Judge Marrero that would take me into June.

12       THE COURT:  I know this is grasping at straws here,

13   when are we likely to have a decision from the Second Circuit

14   with respect to Mr. Whitaker?

15       MR .BAUER:  They issued it would be an order it would

16   be on submission of April 2.  Frankly, we expect there to be a

17   summary order that week.  We are hopeful that Mr. Whitaker's

18   appeal will be a nonissue.

19       THE COURT:  Mr. Greenfield, assuming that you get

20   these records, the DNA records next week, do you anticipate

21   that -- I know this is a difficult question for you to

22   answer -- do you anticipate that may require additional motion

23   practice?

24       MR. GREENFIELD:  It's very conceivable.  I am not a

25   DNA expert.  I would have to have somebody review what was

E3ECCHRC

1    found, what was turned over and then make a decision.  There

2    are two decisions to be made or three.  Do nothing, use it --

3    it may be motion practice or it may well be used during the

4    course of the trial.  Until we see what it is, I can't really

5    answer the question.  I think time is a problem.

6            THE COURT:  It sounds as though it makes most sense to

7    adjourn the trial date even over the very reasonable objection

8    of Mr. Thomas, in order to ensure both Mr. Thomas has an

9    adequate opportunity to receive and review the DNA reports that

10   may exist, and determine what, if anything, ought to be done

11   about it, to ensure that we have the presence of Mr. Buchwald

12   who has been the attorney for Mr. Thomas and to ensure that if

13   we are going to have the presence of Mr. Whitaker, that we have

14   a decision from the Second Circuit.  That is what I am inclined

15   to do.

16           MR. GOLTZER:  We, of course, have no objection.

17           THE COURT:  Being Mr. Whitaker and you?

18           MR. GOLTZER:  Yes, and Ms. Stafford.

19           THE COURT:  I discussed this matter with my staff.

20   The dates that we have available to try this case, the earliest

21   date we would have after our scheduled trial date is May 19.

22   We also have July 1 or July 23.

23           MR. BUCHWALD:  May 19 I will be on trial before Judge

24   Marrero in the case that starts on May.

25           MR. GREENFIELD:  I am scheduled May 19 also somewhere

E3ECCHRC

1   else.

2              MR. BUCHWALD:  One of the difficulties is we had

3   arranged that -- Mr. Bauer, I think was being reasonable in

4   providing the 3500 material to us three weeks in advance so we

5   have an opportunity to share it with our clients under the

6   protective order because we can't leave it with our clients.

7   Obviously, I can't be doing that with the client while I'm on

8   trial, whether with Judge Marrero or Judge Engelmayer.

9              My personal schedule really doesn't open up until

10  August.  My wife will probably kill me if there was an August

11  trial.  Or a September when either I would be available or

12  Mr. Dratel would be available again.  He dropped out of the

13  picture because he has a trial, I think that starts on

14  April 14.  One or the other of us or both of us would be

15  available again in the beginning of September.

16             THE COURT:  What is Mr. Dratel's availability after

17  April 14?

18             MR. BUCHWALD:  He said August and September.

19             THE COURT:  Mr. Greenfield.

20             MR. GREENFIELD:  Other than May 19 through I would say

21  mid to late June, I'm available.  I know his wife.

22             THE COURT:  So do I.

23             MR. GREENFIELD:  I'm on trial starting May 19.  After

24  May 19 through June, mid or late June, I will be finished.

25             THE COURT:  You are not available?

E3ECCHRC

1          MR. GREENFIELD:  I'm not available.

2          MR. GOLTZER:  I have a trial scheduled before Judge

3     Scheindlin July 7.  I don't know yet whether it's actually

4     going to happen, whether the case will be resolved or not.

5     It's early to know that.  It should be about a two-week trial,

6     if it goes.

7          THE COURT:  July 7 is a Monday.  What about July 23?

8          MR. GOLTZER:  I could do July 23, assuming that trial

9     is over.  July 7 is a Monday.  If the trial ended it would be

10    about two or three days before the July 23rd date.  Assuming we

11    had all the discovery.

12         THE COURT:  I have been given some misinformation.

13    What day is July 1?

14         MR. GOLTZER:  A Tuesday.

15         THE COURT:  July 23 is a Wednesday.

16         MR. GOLTZER:  Correct.

17         THE COURT:  We are not starting on any of those dates.

18    I apologize for that.

19         It would be June 30, July 21.  I take it no good for

20    either of you, Mr. Greenfield immediately and Mr. Buchwald.

21         MR. GREENFIELD:  It's not a date I have a problem

22    with, Judge.  Mr. Buchwald, I know he has a problem with the

23    date.

24         MR. BUCHWALD:  From the time I finish the trial before

25    Judge Marrero, assuming I'm still walking and functioning, we

E3ECCHRC

1    wanted the rest of June and July to recover and to be involved

2    in certain personal matters I had scheduled.

3         MR. GOLTZER:  It would just put me in a position if

4    I'm actually on trial before Judge Scheindlin, I would have to

5    read the 3500 while I was trying the case.  There would be no

6    gap between the two trials.

7         THE COURT:  Mr. Bauer, do you have a way out?

8         MR .BAUER:  I don't, your Honor.  I will note the

9    government's disappointment because seven months ago when we

10   set April trial date we went through same exercise.

11        THE COURT:  I remember that my clerk was working like

12   a matrix the availability of the defense lawyers.

13        MR .BAUER:  If you recall one of the solutions was to

14   replace Ms. Sternheim.  With all due respect to Mr. Buchwald,

15   maybe the answer is that we find a replacement.

16        THE COURT:  Mr. Buchwald, I take it that your client,

17   Mr. Thomas, is various desires of going forward as soon as

18   possible.  I know he has made some -- he has indicated to me he

19   wants to say something, I held him off.  Perhaps you want to

20   have a conversation with him about whether he would rather have

21   a substitute counsel that can go forward prior to September.

22        MR. BUCHWALD:  Let me ask him.  He could he could have

23   Mr. Dratel in August.

24        Mr. Thomas would prefer a new lawyer to an

25   adjournment.

1              MR. GREENFIELD:  From April 21st.

2              MR. BUCHWALD:  I think that Mr. Thomas, I think that

3    would be his position.  I think he would understand that if I'm

4    still on trial, I will be starting on the 23rd or 24th, that

5    would be something he would have to live with.

6              THE COURT:  Let me ask counsel, perhaps it would be

7    good for Mr. Thomas to hear this, if substitute counsel were to

8    come in -- and Mr. Greenfield, you have the most relevant

9    experience in this case, how long would it take a new lawyer to

10   come up to speed on the issues of this case sufficient to

11   properly represent Mr. Thomas at a trial.

12             MR. GREENFIELD:  I have been in the case three months

13   and one day and that's not enough.  That's a start.  Minimally,

14   I would say once they get the DNA paperwork, I would say four

15   to five months to feel comfortable to go forward.  If any new

16   lawyer were to come in now -- any now worth who is worth his

17   salt who would come in now would say the same thing.  Anybody

18   who came in and said they would be ready, either doesn't know

19   what they are talking about or -- I don't know what the "or"

20   is.

21             THE COURT:  Mr. Buchwald, do you have a different

22   view?

23             MR. BUCHWALD:  We don't have the DNA issue in the same

24   way that Mr. Christian and Mr. Greenfield do.  I believe a new

25   lawyer could come up to speed in a few months on our case.  I

E3ECCHRC

1   don't believe, without the scientific aspect of the DNA, that

2   it would have to be five months, but it would have to few

3   months.

4           THE COURT:  Does June 30 work for you, Mr. Greenfield?

5           MR. GREENFIELD:  Yes.

6           THE COURT:  Mr. Goltzer.

7           MR. GOLTZER:  I have to be on trial before Judge

8   Scheindlin July 7.

9           THE COURT:  It's expected to last how long?

10          MR. GOLTZER:  Two or three weeks at most.

11          THE COURT:  So July 21 would work, it would work or it

12  would not be great?

13          MR. GOLTZER:  It would really be almost impossible to

14  prepare for the trial if the government gives plea 3500

15  material two weeks before, which means I'm on trial and getting

16  3500 material.  I couldn't properly do either one under those

17  circumstances.  The Court has been through that.

18          THE COURT:  Sure.  Mr. Greenfield.

19          MR. GREENFIELD:  Before any of this is done, let the

20  week go by, see what they come up with from Albany and have

21  paperwork.  That may affect the schedule and we may have more

22  answers to everybody else's schedule a week from today.

23          MR. BUCHWALD:  But if new counsel is coming in, it's

24  better they come in sooner rather than later.

25          MR. GOLTZER:  New counsel, in my view -- I don't think

E3ECCHRC

1    now counsel could come in and try this case in a month.

2            THE COURT:  No.  I'm thinking mid to late July or very

3    early August.

4            MR. GOLTZER:  Early August works.

5            MR. GREENFIELD:  I'm available from mid-June on.

6    That's not an issue.

7            MR. BUCHWALD:  Early August works us for both because

8    I would be available and I believe Mr. Dratel would be

9    available.  If for some reason I'm wrong, we have two of us.

10           THE COURT:  Would you be able to do July 28, Mr.

11   Buchwald?

12           MR. BUCHWALD:  Would I be able to, yes?  Would I

13   prefer if it was later?  The reason I prefer if it was one week

14   later is because I know Mr. Dratel has said he is available in

15   August.  I think he has something early July.

16           THE COURT:  Very well.  It seems by all accounts we

17   will have to put this off anyway.  I think Mr. Greenfield's

18   recommendation is a good one.  Let's see what happens next

19   week.  It appears as those the earliest we could do this trial

20   is July 28.  We will see whether we need to move that date or

21   go into the first week in August.

22           MR. GREENFIELD:  One last comment, any lawyer who is

23   on the capital case panel would not say to you they would be

24   ready any day short than sometime early July at the earliest

25   and probably more into August or September.  Anybody who has

E3ECCHRC

1    tried a murder case knows what's involved.

2          THE COURT:  Very well.  That's where we are.  I say

3    this in part for Mr. Christian and Mr. Thomas's benefit,

4    obviously, this is a very important case.  Obviously, you want

5    to get this done as soon as possible; all of us want get this

6    done as soon as possible.  But it's also very important that

7    you have counsel that is as prepared as they possibly can be.

8    We are now at the stage of purely setting the trial date.  I am

9    very concerned that if we have to bring in new counsel, it will

10   take them a good deal of time to come up to speed and it may

11   take them as much time as we're contemplating setting the trial

12   date because they will want to say, Look, I know you want to go

13   to trial fast, but I'm representing you and I won't going to

14   try until I'm ready particular law because the stakes are so

15   high.  We will reserve on the date; however, it is -- we will

16   adjourn that the current trial date and determine whether we go

17   July 21, July 28 or the first week in August.

18          Mr. Bauer.

19          MR .BAUER:  I was going to ask that we just put a

20   stake in the ground with the leave of defense counsel to asks

21   for movement.  I didn't realize July 21st was on the table.  If

22   we put a stake in the ground at July 28 to give defense counsel

23   leave to adjourn it a week, for lots of reasons, but internally

24   for the government, we have resource issues.  We have a case

25   detective who knows the case better than everybody else -- that

E3ECCHRC

1    seems to be a not to be concern for the defense side, but our

2    side, who has an impending retirement.  I think he is very

3    important to the case.  So I think he would like to know and

4    his bosses would like to know a firm trial date.  I would

5    request we set the trial date either July 28 or August 5.  If

6    another problem arises, then we will hear about it.

7              THE COURT:  Any objection?

8              MR. GREENFIELD:  No.

9              MR. GOLTZER:  We will prefer August 5.

10             MR. BUCHWALD:  We would prefer August 5.

11             MR .BAUER:  That's fine.  In terms of the speedy trial

12    act, I don't know when -- to April 21st.

13             THE COURT:  August 5 is a Tuesday.  August 4 we will

14    set trial.

15             MR .BAUER:  That sounds right.  The government would

16    move to exclude time to August 4 under the Speedy Trial Act for

17    all of the reasons that have been discussed here.

18             THE COURT:  Any objection?

19             MR. GREENFIELD:  No.

20             MR. BUCHWALD:  We cannot consent.

21             THE COURT:  Very well.  Over the objection of Mr.

22    Thomas, I am going to exclude time between today and August 4,

23    under the Speedy Trial Act, for all of the reasons discussed

24    during this conference, including the availability of defense

25    counsel, the anticipated decision from the Second Circuit

E3ECCHRC

1    concerning Mr. Whitaker, the additional provision of certain

2    items of discovery, including forensic discovery, concerning

3    Mr. Thomas and crime scene forensic information, providing

4    defense counsel with the time to review that additional

5    discovery and determine whether any additional motions may be

6    required for all of those reasons.

7            I find that the interest of the public in the speedy

8    and public trial is outweighed by the interest of the

9    defendants in that regard.  Anything further?

10           MR .BAUER:  In terms of the relevant dates that we had

11   set, relative to April trial date, I would suggest that we keep

12   the same structure.  We agreed to turn 3500 material over 18

13   days before trial.  So that would be now I'm suggesting we do

14   July 17.  404(b) expert notice, I believe, request to charge,

15   voir dire, motions in limine, they were all one month before

16   trial.  I guess that's July 4.  I don't know what day of the

17   week July 5 is.  I guess it would be a Tuesday.  So July 5.

18           THE COURT:  July 4 is not a Monday.  You are thinking

19   July 4 weekend.

20           MR .BAUER:  Whatever the next business day is.

21   July 7.

22           THE COURT:  July 7.  Next week we are not setting a

23   status.  You will let me know whether you need me to do

24   anything.

25           MR .BAUER:  To be clear, your Honor, in terms of the

E3ECCHRC

1  DNA and fingerprints and everything we discussed, we won't

2  until those July dates, we will endeavor to turn them all over

3  next week.

4      THE COURT:  By next week.  Anything further?

5      MR .BAUER:  Not from the government.

6      MR. GOLTZER:  There is a tape from an alleged

7  coconspirator that was made a couple years after the crime.  I

8  don't know if the government is going to be putting that in, or

9  trying to put it in.  If they are we probably need time to

10  respond in a memorandum, the Burden tape.

11      MR .BAUER:  Yes, your Honor, in considering motions in

12  limine were due next week we already began drafting motion in

13  limine for that tape's admissibility.  We assumed we would be

14  putting that motion in limine July 7.  Defense counsel can be

15  own notice now we will be seeking the admission.

16      THE COURT:  Is that Kevin Burden?

17      MR .BAUER:  Your Honor, that's Kevin burden.  He

18  discussed the murder with a cooperating witness and that

19  recording has been turned over to defense counsel.

20      THE COURT:  Okay.

21      MR. BUCHWALD:  Is your motion still going to go in

22  next week?

23      MR .BAUER:  No, July 7.

24      MR. BUCHWALD:  I would suggest that the it go in as

25  early as possible.

E3ECCHRC

1          MR. GOLTZER:  It really should.

2          MR. BUCHWALD:  It will be one of most significant

3     parts of this case, whether it's in or out.  It is highly

4     doubtful to me that will get in, but any event, it will be a

5     very contentious issue.  It would be useful if it was briefed

6     as fully as possible.

7          THE COURT:  If it's that important to you all maybe

8     you could take the lead and moving to preclude it.

9          MR. BUCHWALD:  We need to know their theory of

10    admissibility.  It's very hard to fathom.

11         THE COURT:  You can move to preclude in any event.

12    This isn't in the nature of motion in limine.  If what defense

13    counsel is suggesting that it raises extraordinarily complex

14    legal or factual issues, such that it ought to be considered

15    sooner in order not to affect a trial date further, then that

16    may be an issue worth considering.

17         MR .BAUER:  They can make a motion and they can ask

18    that you set a calendar that we respond earlier than July 7.

19    The government doesn't think it's necessary, but if they do, as

20    you said, they could jointly file that motion now.

21         MR. BUCHWALD:  The prosecutor just represented they

22    were prepared to do this on the 7th.  I am on trial until at

23    least the middle of April.

24         THE COURT:  You can't ask the government to do the

25    work for you.

E3ECCHRC

1          MR. BUCHWALD:  But they were going -- he was going to

2     be making in limine motions.

3          MR .BAUER:  It's the same difference.  Somebody make

4     as motion.  The other person opposes it.  It was going to

5     happen either way.

6          THE COURT:  If you are going to make the motion to

7     preclude, do that.  You can do that as soon as you want.

8          Thank you.

9          (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25