```
E84nchr1
```

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    UNITED STATES OF AMERICA
3              v.                              12 CR 626 (ER)
    RAYMOND CHRISTIAN a/k/a
4   "Reckless"
    GLENN THOMAS, a/k/a "Gucci"
5   TYRELL WHITAKER, a/k/a "Bow Wow"
                   Defendants
6   ------------------------------x
                                               New York, N.Y.
7                                              August 4, 2014
                                               9:00 a.m.
8

9   Before:
                       HON. EDGARDO RAMOS
10                                             District Judge

11
                             APPEARANCES
12  PREET BHARARA
         United States Attorney for the
13       Southern District of New York
    ANDREW BAUER
14  KAN M. NAWADAY
         Assistant United States Attorney
15
    DAVID S. GREENFIELD
16       and
    ANTHONY STRAZZA
17       Attorneys for Defendant Christian

18  LAW OFFICES OF DON BUCHWALD
         Attorney for Defendant Thomas
19  DON D. BUCHWALD

20  KELLEY DRYE & WARREN LLP
         Attorney for Defendant Thomas
21  LEVI DOWNING

22  GEORGE ROBERT GOLTZER
         and
23  YING STAFFORD
         Attorneys for Defendant Whitaker
24  -- also present--
    S.A. Andrei Petrov - FBI
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

         (In open court; defendants not present)

         THE COURT:  Good morning.

         Were you able to get the clothes to the marshals?

         MS. STAFFORD:  Yes.

         MR. GREENFIELD:  I think our clothing was delivered.

         THE COURT:  OK.  But you delivered the clothes to the marshals this morning.

         MS. STAFFORD:  Tyrell Whitaker just got his clothes.

         THE COURT:  OK.

         MR. GREENFIELD:  We need tables, Judge.

         THE COURT:  You need what?

         MR. GREENFIELD:  Two more tables.

         THE COURT:  Two more tables?

         MR. GREENFIELD:  The way it's been used previously in this courtroom, we have an L-shaped table.  You have six lawyers --

         MR. BAUER:  Seven lawyers.

         MR. GREENFIELD:  Seven lawyers and three clients.  For today this is fine.

         THE COURT:  Right.

         Mr. Bauer, can I ask you, is the way to get into this courtroom if you are a citizen with no swipe card using the side entrance?

         MR. BAUER:  I think you can use the main entrance on

1   40 Centre and then just walk to the alternative --
2              THE COURT:  But you do have to use that?
3              MR. GOLTZER:  You can use the side door.
4              THE COURT:  The elevator bank, the only elevator bank
5   that will give you access is the one on the side?
6              MR. GOLTZER:  The one next to the cafeteria.
7              MR. BUCHWALD:  Just in connection with the voir dire,
8   if we could tell them about lunch so that either the attorneys
9   should be able to use this cafeteria -- that's the best, if the
10  attorneys can use this cafeteria and they can't.  That would be
11  the best.
12             THE COURT:  Yes.  I think we tell them that today.
13             THE LAW CLERK:  We always tell the jury that they
14  can't use our cafeteria.
15             MR. BUCHWALD:  That would be OK.
16             THE COURT:  Also, I am going to do the allocution
17  concerning the plea offers that were made, so the government
18  should be prepared to indicate on the record what offers were
19  made.  And defense counsel should be prepared to tell me
20  whether they discussed those offers with their clients and
21  whether the offers were rejected.  I won't inquire directly of
22  the defendants other than to ask them whether they heard the
23  questions that I put to the lawyers and their answers.
24             MR. GOLTZER:  I think they sent us an email with that.
25             THE COURT:  OK.  If you have an offer --

1          MR. BAUER:  We talked to our supervisors.  We looked
2     at our policy.  We are willing to not put the substance of the
3     plea offers but rather that the plea offers were made on a
4     certain date and then the allocution of the defense lawyers
5     that they spoke to their clients and that the clients didn't
6     take them.  It is obviously our preference to put the substance
7     on, but it is not necessary for us.
8          THE COURT:  OK.  Good morning, Mr. Dratel.
9          MR. DRATEL:  Good morning, your Honor.
10         THE COURT:  We are going to go ahead and call the
11    case.  The clients aren't here.  They're getting dressed.  To
12    the extent that we can take care of any logistical matters,
13    let's go ahead and call the case.
14         (Case called)
15         MR. BAUER:  Good morning, your Honor.  Andrew Bauer
16    and Kan Nawaday for the government joined at counsel table by
17    FBI Special Agent Andrew Petrov.
18         THE COURT:  Good morning.
19         MR. GREENFIELD:  David Greenfield for Raymond
20    Christian and Andrew Strazza, standing to my left.
21         MR. GOLTZER:  Good morning, your Honor.  Ying Stafford
22    and George Goltzer for Mr. Whitaker.
23         THE COURT:  Good morning.
24         MR. BUCHWALD:  Good morning, your Honor.  Don Buchwald
25    and Josh Dratel for Mr. Thomas.  We will be joined by Levi

1   Downing, who is at the MCC delivering some clothes right now.
2           THE COURT:  He's delivering the clothes across the
3   street now?
4           MR. BUCHWALD:  Yes.  I mean, they are here, the one
5   set of clothes the client is putting on right now.  It's the
6   remaining clothes that are being delivered.
7           THE COURT:  I see.  Mr. Dratel, did you have
8   something?
9           MR. DRATEL:  The electronic devices, something from
10  the Court.
11          THE COURT:  Sure.
12          MR. DRATEL:  If I can get that today, I will bring it
13  up today.  I left it downstairs.
14          (Defendants present)
15          THE COURT:  The record should reflect that Messrs.
16  Christian, Thomas and Whitaker are now in the courtroom.
17          OK.  Folks, if we can settle down so we can take care
18  of this little bit of business.  I am going to inquire pursuant
19  to the authority of the Supreme Court cases *Missouri v. Frey*,
20  reported at 132 S.Ct. 1399, and *Lafler v. Cooper*, reported at
21  132 S.Ct. 1377, which together stand generally for the
22  proposition that failure on the part of defense counsel to
23  effectively communicate plea offers made to criminal defendants
24  can constitute ineffective assistance of counsel.
25          In that regard, I am going to ask of the government

E84nchr1

whether plea offers were made, and I am going to inquire of the defense counsel whether they received those plea offers and communicated them to their clients.

So Mr. Christian, Mr. Thomas, and Mr. Whitaker, I want you to listen very carefully as I ask these questions.

Mr. Bauer, did the government extend a plea offer to the defendant Raymond Christian?

MR. BAUER:  It did, your Honor.  The plea offer was extended on July 11 of this year.

THE COURT:  Was that offer in writing?

MR. BAUER:  Yes, it was.

THE COURT:  Mr. Greenfield?

MR. GREENFIELD:  Yes, your Honor.

THE COURT:  Did you give your client Mr. Christian a copy of the plea offer and discuss it with him.

MR. GREENFIELD:  We discussed it with him, Judge.

THE COURT:  I'm sorry?

MR. GREENFIELD:  It was discussed with him.

THE COURT:  Did you make a recommendation as to whether he should accept or reject the offer?

MR. GREENFIELD:  Judge, I spoke to my client about the plea offer, and I really would prefer not to get into his conversation with me and my conversation with him.  I think they fall under the attorney-client privilege.

THE COURT:  In any event, the government's offer was

E84nchr1

1   not accepted, correct?
2             MR. GREENFIELD:  That's correct, Judge.
3             THE COURT:  Mr. Bauer, with respect to the defendant
4   Tyrell Whitaker, was a plea offer made to him?
5             MR. BAUER:  Yes, two offers, your Honor.  The first
6   was extended on that same day, July 11 of this year.  After
7   back and forth with Mr. Goltzer and Ms. Stafford, a revised
8   plea offer was extended on July 21 of this year as well.
9             THE COURT:  Was that also in writing?
10            MR. BAUER:  Both of those offers were in writing.
11            THE COURT:  Mr. Goltzer, did you receive those offers
12  and discuss them with your client?
13            MR. GOLTZER:  Yes.
14            THE COURT:  The offers were rejected ultimately?
15            MR. GOLTZER:  Yes.
16            THE COURT:  Thank you.
17            With respect to Mr. Thomas, Mr. Bauer, did the
18  government make an offer to Mr. Thomas?
19            MR. BAUER:  Yes, your Honor.  One offer, in writing,
20  on July 11 of this year.
21            THE COURT:  Mr. Buchwald, did you receive that offer
22  from the government and discuss it with your client?
23            MR. BUCHWALD:  Yes, your Honor.
24            THE COURT:  The offer was rejected?
25            MR. BUCHWALD:  That is correct.

1      THE COURT:  Mr. Christian, did you hear the questions
2 that I put to the government and your attorney and the answer
3 that they provided.
4      DEFENDANT CHRISTIAN:  Yes.
5      THE COURT:  Mr. Whitaker, did you hear the questions
6 that I put to government and to your attorneys and the answers
7 that they provided.
8      DEFENDANT WHITAKER:  Yes.
9      THE COURT:  Mr. Thomas, did you hear the questions
10 that I put to the government and to your attorney and the
11 answers that they provided?
12      DEFENDANT THOMAS:  Yes.
13      THE COURT:  Thank you, gentlemen.
14      So we I guess all we need do at this point is wait for
15 the venire to arrive.  We are the only case scheduled to go to
16 trial today, so I anticipate that we will have the jury
17 shortly, but I don't know precisely when.
18      Is there any other work that we needed to do before
19 the venire comes up?
20      MR. NAWADAY:  Just a logistical matter, your Honor.
21 It is our understanding that the jury room for this courtroom
22 is on the third floor.  It actually abuts the passageway used
23 by the marshals to bring the defendants in from MCC to the
24 Court.  It also abuts, that same passageway is the passageway
25 that the government personnel use to go back and forth from One

1  St. Andrew's to this courthouse. I wondered whether your Honor
2  was going to be using that jury room, only because it's my
3  understanding that if you talk too loudly in the passageway the
4  jurors in that jury room can actually hear you.
5       THE COURT: That jury room is also immediately
6  adjacent to the robing room, and my clerks conducted an
7  experiment last Friday and determined that anything that is
8  said in the robing room can be heard pretty clearly in the jury
9  room. It is my intention to use the adjoining jury room. It
10 is the jury room that is connected to this courtroom.
11      I guess my greater concern, because I expect that the
12 government and all parties will be discreet in their
13 conversations when moving about the hallways, my greater
14 concern, now that you mention it, because I didn't know about
15 the marshals, is that the jurors not see the defendants when
16 they are being transported to and from the building. Let me
17 ask the marshals, is there any point at which in the hallways a
18 juror might see a defendant being walked to the holding
19 facility in handcuffs?
20      MARSHAL: There wouldn't be a possibility of that.
21      THE COURT: OK. Thank you.
22      Anything else, Mr. Bauer?
23      MR. BAUER: Your Honor, if we are just sitting here
24 waiting around, Mr. Strazza filed a letter last night with
25 regards to the Burden tape. I guess revisiting one point with

1  regards to the Burden/Mallory tape.  I am happy to address it
2  now.
3              THE COURT:  Yes.  Absolutely.
4              MR. BAUER:  As far as I understand, the way we left it
5  on Friday is that you had granted our motion or declined
6  defense's motion to preclude that tape, with the caveat that
7  you were going to revisit that ruling before we actually get to
8  the tape to make sure that the corroborating circumstances that
9  we have proffered are actually elicited in a similar fashion.
10             Is that your understanding as well, your Honor?
11             THE COURT:  Correct.
12             MR. BAUER:  So Mr. Strazza's letter stated that he
13 objected to excerpts 1, 2, and 3, and specifically he stated
14 that it was his position that excerpts 1, 2, and 3 are not
15 against Mr. Burden's penal interests.  I respectfully disagree.
16             Excerpt 1, for instance, it is the conversation is
17 about the chrome .38 and his possession of the chrome .38, the
18 same chrome .38 that he handed over to Mr. Whitaker.  That is
19 obviously implicating his penal interests.
20             THE COURT:  For the record, the government's proposed
21 Exhibit 291T, at the end of page 1 and going into page 2, there
22 is a discussion about a "chrome .38" which Mr. Burden
23 acknowledges at the top of the page.  I take it that there will
24 be testimony concerning that particular weapon.
25             MR. BAUER:  Of course, your Honor.

1            THE COURT:  OK.

2            MR. BAUER:  So that is excerpt 1.

3            Excerpt 2 I would say is more background with regards
4    to some of the other conversations we had on Friday, namely,
5    Mr. Burden's membership in the Bloods and his connection with
6    L-1, James Williams.

7            I would think that his own proclamations in excerpt 2,
8    in which he is claiming membership to the Bloods, in connection
9    to our other corroborating circumstances, that being that one
10   of the main motivating factors of the robbery that turned into
11   the murder of Jeffrey Henry was the membership in the Bloods,
12   there will be evidence from many other cooperating witnesses
13   that Mr. Burden was a blood, he was a high-ranking member of
14   the Bloods, he had status.  It was because of that that
15   Mr. Whitaker, for instance, had been taken under his wing.  He
16   also was storing guns for James Williams, another high-ranking
17   member of the Bloods, at his house.

18           So it falls more in line of background, but it's
19   background about his membership in a gang that, when connected
20   to the other evidence, is clearly against his penal interests.

21           THE COURT:  OK.

22           MR. BAUER:  Excerpt 3 --

23           THE COURT:  Mr. Strazza, did you wish to respond.

24           MR. STRAZZA:  I just wanted to note our position on
25   the record that membership in a gang is not necessarily a crime

Case 1:12-cr-00626-ER   Document 151   Filed 09/16/14   Page 12 of 14      12
E84nchr1

1    in and of itself or a declaration against penal interest.
2             THE COURT:  OK.
3             MR. BAUER:  To that, your Honor, the government
4    doesn't disagree, but it's the membership in the Bloods plus
5    all of the other evidence that makes it against penal interest.
6             As for excerpt 3, your Honor, excerpt 3 on page 2, the
7    fourth entry down, is something that I quoted on Friday.  The
8    cooperator is talking to Mr. Burden and says that he talking
9    about how James Williams had called over for the guns and
10   Mr. Burden then says, yeah, I remember, exactly.  I brought
11   that up as an argument rebutting that he was just a passive
12   member of this conversation.
13            He is very actively accepting the statements of the
14   cooperator as relates to James Williams calling him and asking
15   them to give guns over to his young boys.  So, again, it
16   implicates his penal interest as well.
17            THE COURT:  OK.
18            Unless, Mr. Strazza, you had anything to add?
19            Actually, I had a question going through the
20   government's exhibits.  There are a number of autopsy pictures
21   of the victim, Mr. Henry.  Does the government anticipate that
22   it will be offering those pictures?
23            MR. BAUER:  No, your Honor.  There are a number of
24   exhibits like that which we marked in the event that an issue
25   arises in defense's cross-examination.  But, no, I think the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   government would agree that, absent an otherwise important need
2   to introduce that evidence, it would be too inflammatory.
3             THE COURT:  Very well.
4             Anything else?
5             MR. BUCHWALD:  Your Honor, just one question about
6   logistics.  Is there a way to get the second table in here?
7             THE COURT:  We are making the request.  If there is a
8   way, we will have it done.
9             OK.  We will check in with the jury folks and let you
10  know as soon as everyone is ready.
11            I am told that it's going to be another hour before
12  the jury is ready.  The venire is going through their
13  orientation.  I am told it is going to be another hour.  So why
14  don't we reconvene at 20 after.
15            (Recess)
16          (Continued on next page)

Case 1:12-cr-00626-ER   Document 151   Filed 09/16/14   Page 14 of 14     14
E84nchr1

1              (Proceedings resumed)

2              THE COURT:  Actually having been handed these inserts,
3     I am reminded that there was another matter that came in over
4     the weekend concerning a picture from Mr. Buchwald.

5              Oh, there's a table.  Look at that.  We can't see you,
6     but -- was it you, Mr. Buchwald, that submitted an objection
7     to --

8              MR. BUCHWALD:  Yes.  I think they substituted, but
9     they have a question about whether it's light enough or not so
10    we're going to actually see the two faceplates tomorrow and
11    determine, I think.

12             MR. BAUER:  Yes.

13             Mr. Buchwald's concern was that our previously marked
14    Exhibit 202 of his client was an unfriendly pose.  We printed
15    out another version that we had had.  It's a little dark.  It's
16    a little difficult to see.  So tomorrow we've decided that we,
17    the government and defense counsel, will compare the two as
18    they look on the faceplates that we planned on showing the jury
19    and hopefully we will come to an amicable resolution on which
20    of the pictures to use.

21             THE COURT:  Very well.

22             (Jury selection follows)

23             (Adjourned to August 5, 2014 at 9:00 a.m.)

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300