UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 12 Cr. 626 (ER)

RAYMOND CHRISTIAN,

Defendant.

------------------------------x

New York, N.Y.
February 9, 2016
11:45 a.m.

Before:

HON. EDGARDO RAMOS,

District Judge

APPEARANCES

PREET BHARARA
United States Attorney for the
Southern District of New York
KAN M. NAWADAY
Assistant United States Attorney

KREINDLER & KREINDLER LLP
Attorneys for Defendant
MEGAN WOLFE BENETT

1            (Case called)
2            MR. NAWADAY:  Good morning, your Honor.  Kan Nawaday,
3    for the government.
4            MS. BENETT:  Good morning, your Honor.  Megan Wolfe
5    Benett on behalf of Mr. Christian, who is seated to my right.
6            THE COURT:  I put this matter on for a conference
7    because I received a letter from Mr. Christian that I do not
8    believe has been shared with the government, concerning
9    Mr. Christian's concerns about his representation, so I wanted
10   to speak with him and with Ms. Benett.  Ms. Benett, is there
11   anything that you want to say publicly?
12           MS. BENETT:  Sure.  Thank you, your Honor.  As the
13   Court knows and as the government knows from prior
14   conversations, I think the two substantive topics raised in the
15   communication concern issues of discovery that have been topics
16   raised over the course of Mr. Christian's representation, both
17   pretrial, during trial, and posttrial.  And I think it might be
18   helpful, I don't know if the Court recalls that in the
19   posttrial briefing there was an issue that we raised in
20   connection with the sufficiency of the DNA evidence linking
21   Mr. Christian to, and I'm sure the Court remembers probably
22   better than I do, having sat through the trial, but the major
23   forensic evidence in the trial was DNA samples taken from the
24   face mask.
25           THE COURT:  Ski mask.

1         MS. BENETT:  The ski mask recovered from the scene and
2    sent to the state lab for analysis, and then certain ballistics
3    evidence, and the DNA evidence was not subject to analysis by a
4    defense expert.  And one of the issues that we'd raised in
5    connection with the posttrial briefing was if the Court
6    disagreed with the defense position as to the insufficiency of
7    the DNA evidence linking Mr. Christian to the events of
8    December 15, 2010, that it in the alternative *post hoc* appoint
9    an expert to analyze that evidence.  And I think it would be
10   helpful, I believe the Court ruled on the motions in their
11   entirety, but I think it might be helpful to have a ruling on
12   the record with respect to that particular request.
13         Then the other issue that was raised, and I brought
14   this up with the government and their position, I think, is in
15   the absence of controlling legal authority they're not inclined
16   to do anything more on this point, but there is some question
17   about a photograph that may have been taken on December 17,
18   2010, two days after the Jeffrey Henry shooting, during which
19   series of events one of the assailants was injured, and it was
20   that injury that resulted in the expression of DNA evidence on
21   the ski mask.  Mr. Christian was taken in for questioning two
22   days after that incident, and I have an audio recording of that
23   questioning, but I don't have a video recording or any
24   photographs.  It's my understanding from informal communication
25   with the government that there is not photographic evidence,

1  that there was not a photograph taken at the December 17
2  questioning, but I can't confirm for it Mr. Christian.  I
3  haven't had access to the city of Newburgh police department
4  files so I can't confirm with certainty the existence or
5  nonexistence of that photograph.  So that's sort of the
6  background of two issues that were raised in my client's
7  communication with the Court.  I'm not sure if there is
8  anything that can be done other than perhaps the Court
9  addressing the request for the appointment of a defense DNA
10 expert, and then I don't know if the government is able to make
11 a representation as to the existence or nonexistence of a
12 photograph.
13         THE COURT:  What would be the gravamen of that
14 photograph, if you can say?
15         MS. BENETT:  I think the theory would be that it was
16 exculpatory insofar as it showed the absence of any injuries on
17 Mr. Christian's face and thus would have been inconsistent with
18 the defense theory that Mr. Christian was the individual
19 wearing the ski mask and bled on to the ski mask as a result of
20 the assault that culminated in Mr. Henry's shooting.
21         THE COURT:  I forget.  Mr. Nawaday, perhaps you
22 recall.  The DNA that was taken from the ski mask, was that
23 blood DNA or other DNA?
24         MR. NAWADAY:  I believe some of it was blood DNA.
25         THE COURT:  So let me ask, are you familiar with this

1    issue of the picture?

2            MR. NAWADAY:  Your Honor, I am somewhat familiar with
3    it.  Ms. Benett has asked us.  We are not aware of any such
4    photograph.  We believe we have provided all the discovery that
5    the defense was entitled to that we had for them to make their
6    case.  On the request for the appointment of a DNA expert, I
7    think the issue is the posture of this case.  The defense has
8    had access to the DNA.  It's been made available to them.  They
9    made a decision not to have it tested on their own.  The
10   defendant's been convicted.  I don't see what procedural
11   mechanism there is for or what basis there is for them now to
12   fight that evidence, which is what it sounds like they're
13   doing.  The only thing I can see, and I'm reading tea leaves
14   here, would be a 2255 motion for ineffective assistance for not
15   having the DNA tested, and I think that is up to the defendant,
16   if he wants to make his 2255 now or wait until after his
17   appeal.

18           THE COURT:  Can he make a 2255 before sentence?

19           MR. NAWADAY:  On ineffective assistance, I think he
20   might be able to.  It's the Court's discretion, but the issue
21   is it would be one bite at the apple.  He would have to be
22   given warnings that he's got to make every argument he has now,
23   and of course there very well may be other arguments he is
24   unaware of, he doesn't know, after his appeal.

25           THE COURT:  I don't recall, as I sit here, I'm not

1    doubting it, but I don't recall the defendant making an
2    alternative request for relief that a defense DNA expert be
3    assigned.  Did the government respond to that, as far as you
4    recall?
5            MR. NAWADAY:  I can check, but I'm pretty certain that
6    there was no request from Mr. Christian's trial counsel to test
7    any of the DNA.  My own speculation about why they didn't was
8    because it was a strategic reason.  If your Honor will recall,
9    they caught us by surprise with what they did argue about the
10   DNA at trial.
11           THE COURT:  Let me ask specifically about the
12   posttrial briefing.  Ms. Benett indicated that they made a
13   request, they made an argument in the alternative that if I
14   don't rule in their favor in connection with the DNA evidence,
15   that I at least assign a defense expert.  Do you recall that,
16   because I don't, honestly?
17           MR. NAWADAY:  I think it was maybe in a footnote.
18           MS. BENETT:  It was.
19           MR. NAWADAY:  But we, of course, would disagree and
20   object to that.  We don't think there's any basis to assign one
21   now.  Your Honor's ruled on the sufficiency of the evidence,
22   and frankly, even without the DNA evidence, there was
23   sufficient evidence of the defendant's guilt that was proven up
24   at trial.
25           THE COURT:  Ms. Benett.

1          MS. BENETT:  That's correct, your Honor.  It was not

2  an issue that we pressed vigorously because of the procedural

3  posture in which we were making a request.  I did ask in a

4  footnote if the Court were disinclined or were to deny the

5  motion with respect to the sufficiency on the basis of that

6  part of the DNA evidence that we be given an opportunity to

7  test that DNA evidence, but we recognized the limited arsenal

8  that we had to work with in making that request.

9          THE COURT:  I'm going to deny that request.  I don't

10 see any basis for granting it at this juncture.  Defense

11 counsel had plenty of opportunity to get their own expert at

12 the time, and now is not the time, after the trial has

13 concluded, to begin doing this.

14         That aspect of your request, Mr. Christian, will be

15 denied.

16         Mr. Nawaday, can I impose upon you to see whether or

17 not there exists such a picture?  Let me ask this.  You

18 provided the defense with an audio recording of that interview?

19         MR. NAWADAY:  I believe that's correct.

20         MS. BENETT:  I've gone through all the discovery

21 multiple times trying to find a photograph, and what I have

22 from December 17, and I received a full copy from trial counsel

23 of everything that was produced, all the 3500 material and all

24 the pretrial discovery, and the only thing that I have found

25 has been an audio recording of the December 17, 2010,

1  interview.  It may be, I have to confess, that I don't have the
2  compatible software if it was a video recording.  But I've
3  routinely been able to review videos by the federal government
4  in the course of discovery in these cases, so it seems more
5  likely to me that there's audio but not a video recording, but
6  I can't say with 100 percent certainty that what was produced
7  was not video in some format, but what I definitely do not have
8  is a photograph.  Of that I am certain.
9           THE COURT:  What is the basis for your belief that a
10 photograph exists?
11          MS. BENETT:  It is my understanding that if there were
12 a photograph, it would show Mr. Christian without any of the
13 injuries.
14          THE COURT:  I understand the importance that you would
15 attach to such a photograph, but what is the basis for your
16 belief that it exists, that there is actually a photograph?
17          MS. BENETT:  I'll give the Court two answers to that.
18 First would be the sort of routine practices of the police
19 department and what I've seen in the course of reviewing other
20 discovery materials in this case in which there have been
21 several photographs of suspects or witnesses to the events of
22 December 10 that were included in the discovery material.  And
23 the other answer I would offer, I'm trying to figure out how to
24 respond to it without impermissibly interfering with --
25          THE COURT:  I'm going to ask Mr. Nawaday to step

1    outside in a second.
2             MS. BENETT:  The other answer would have to do with
3    what I understand to have transpired during the course of that
4    December 17, 2010, interview.
5             THE COURT:  OK.  Mr. Nawaday, can I ask you to look
6    into whether such -- well, first of all, do you know as you sit
7    here whether the recording of the December 17 interrogation was
8    just audio or audio and video?
9             MR. NAWADAY:  I don't remember.  And insofar as the
10   photo, I will confirm again, but it's my understanding based on
11   internal correspondence with a former colleague that we don't
12   have this particular photograph, the government doesn't have
13   it, and that we have gone and asked our counterparts at the
14   Newburgh police whether they have it, and as far as I
15   understand they don't; it doesn't exist.
16            THE COURT:  OK.
17            MR. NAWADAY:  But I will confirm all of that again.
18            THE COURT:  Very good.  Would you mind just waiting
19   outside the door.
20            (Pages 10-13 SEALED)
21
22
23
24
25

G29WchrC

1  THE COURT:  Welcome back, Mr. Nawaday.  I just wanted
2  to let you know that Ms. Benett will be staying on the case.
3  Unless there is anything else, we will be adjourning, except
4  that I will again ask you to follow up on the issue concerning
5  the photograph and/or video and let the Court and Ms. Benett
6  know as soon as you have that information.
7  Unless there's anything else, we are adjourned.
8  MR. NAWADAY:  Thank you.
9  MS. BENETT:  Thank you.
10  (Adjourned)