UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
UNITED STATES OF AMERICA,

   -  v.  -

RAYMOND CHRISTIAN

               Defendant.
------------------------------------------------------------X

12 Cr. 626 (ER)

**Defendant Raymond Christian's Supplemental Fed.R.Crim.P. 29 Motion for a Judgment of Acquittal and Fed.R.Crim.P. 33 Motion for a New Trial**

**TABLE OF CONTENTS**

I.    Introduction ................................................................................................................... 3

II.   Statutes Involved ........................................................................................................... 4

III.  Argument ....................................................................................................................... 5

   A.   Hobbs Act Robbery Under § 1951(b) Does Not Qualify as a "Crime of Violence" for Purposes of the Force Clause of § 924(c)(3) as it Can Be Violated Without (1) the Use, Attempted Use or Threatened Use of *Violent Physical Force* or (2) an *Intentional Threat of the Same* ..................................................................................................... 6

      i.   The Act of Putting Someone In Fear of Injury Does Not Require the Use, Attempted, Use or Threatened Use of "Violent Force" .......................................... 7

      ii.  Under the § 924(c)(3)(A) Force Clause, "Physical Force" Must be Intentional, While the Hobbs Act "Fear of Injury" Can Be Satisfied Without Intentional Conduct ..................................................................................................... 11

   B.   The Residual Clause of 18 U.S.C. § 924(c)(3) is Unconstitutionally Vague ................ 12

      i.   *Johnson* Expressly Overruled the "Ordinary Case" Approach to Determining Whether a Felony Qualifies as a "Crime of Violence" ......................................... 13

      ii.  Under *Johnson*, § 924(c)(3)(B) Is Unconstitutionally Vague .............................. 16

IV.  Conclusion .................................................................................................................. 19

Defendant Raymond Christian hereby supplements his prior motion for a judgment of acquittal and/or a new trial pursuant to Fed.R.Crim.P. 29 and 33 with respect to Counts Four and Five, which convicted Mr. Christian and his co-defendants of firearm offenses committed in furtherance of a Hobbs Act conspiracy and Hobbs Act robbery in violation of 18 U.S.C. §§ 924(c) and 924(j).[1]  Co-defendants Tyrell Whitaker and Glenn Thomas join in this submission.

I.      **Introduction**

Mr. Christian was convicted of four counts at trial, including a Hobbs Act conspiracy (Count One), an attempted Hobbs Act robbery (Count Two) and two 18 U.S.C. § 924 charges (Counts Four and Five). As to the "crime of violence" element to the two § 924 counts, the jury was instructed that if they found proof beyond a reasonable doubt that Mr. Christian participated in the Hobbs Act conspiracy or "the attempted robbery" in violation of 18 U.S.C. § 1951 then the "crime of violence" element in § 924 had been satisfied as a matter of law. Trial Transcript ("Tr.Trans."), pp. 2435, 2437 (while in connection with Count Four, the jury was instructed that an attempted robbery was a crime of violence, on Count Five the instruction spoke only to a completed robbery.)  Because Hobbs Act robbery under 18 U.S.C. § 1951(b)(1) categorically fails to constitute a crime of violence under the force clause in 18 U.S.C. § 924(c)(3)(A), however, and because the Supreme Court's ruling in *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015) renders the residual clause in 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague, the convictions for Counts Four and Five of the superseding indictment must be vacated and those counts dismissed.

---

[1]Defense counsel notes the substantial assistance she received from model motions maintained by the office of the Federal Defender in preparing this memorandum.

3

## II.  Statutes Involved

This motion primarily concerns the following two federal statutes:

- **18 U.S.C. § 1951(b)(1)**

The Hobbs Act statute provides, in pertinent part, that:

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining … .

- **18 U.S.C. § 924**

Section 924(c)(1)(A), provides, in pertinent part, that:

> [A]ny person who, during and in relation to a crime of violence … uses or carries a firearm, shall, or who in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence [face enhanced punishment.]

Section 924(j) sets forth enhanced punishment when:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm … .

Under § 924(c)(3), "crime of violence" is defined as follows:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> (A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

**III.    Argument**

The Court must vacate the convictions for the 18 U.S.C. § 924 violations (Counts Four and Five) and dismiss those charges because the predicate Hobbs Act robbery offenses as defined by §1951(b)(1) do not qualify as a "crime of violence" as a matter of law.

After being instructed that a Hobbs Act robbery was the "unlawful taking of personal property from another against his or her will" which is done by "threatening or actually using force[,] violence or fear of injury" (described as "actual or threatened force, violence or fear of injury"), the jury convicted Mr. Christian of both Counts One and Two, conspiring to and actually committing a Hobbs Act robbery. Trial Tr., pp. 2408, 2415.  It also, after being instructed that Counts One and Two constituted crimes of violence for purposes of § 924, convicted him of Counts Four and Five.  (When instructing the jury on Counts Four and Five, the Court alternately described the underlying crimes of violence as either the Hobbs Act conspiracy, a Hobbs Act robbery or an attempted Hobbs Act robbery. Tr. Trans., pp. 2435, 2437.)

As noted above, the relevant portion of § 924(c) defining a "crime of violence" for purposes of both Counts Four and Five has two clauses.  The first clause – 924(c)(3)(A) – is commonly referred to as the "force" clause.  The other – 924(c)(3)(B) – is commonly referred to as the "residual" clause.  Hobbs Act robbery under § 1951, however, categorically fails to qualify as a "crime of violence" under § 924(c)(3)'s force clause because the Hobbs Act crimes could be accomplished by simply placing a person in fear of future injury to person or property, which (1) does not require threat of violent physical force or physical force and (2) does not require the intentional threat of the same.  Evidence of that infirmity is amplified here by the jury instructions, which expressly authorized convictions on Counts Four and Five even in the absence of violent or other physical force.  Further, under *Johnson* the "residual clause" set forth

in § 924(c)(3)(B) is unconstitutionally vague and cannot sustain a conviction. Therefore, the convictions for Counts Four and Five of the superseding indictment must be vacated and those charges dismissed.

### A. Hobbs Act Robbery Under § 1951(b) Does Not Qualify as a "Crime of Violence" for Purposes of the Force Clause of § 924(c)(3) as it Can Be Violated Without (1) the Use, Attempted Use or Threatened Use of *Violent Physical Force* or (2) an *Intentional* Threat of the Same

In analyzing whether a predicate offense qualifies as a "crime of violence" under § 924(c), courts must use a categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Acosta,* 470 F.3d 132, 135 (2d Cir. 2006); *see also United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2014); *United States v. Serafin*, 562 F.3d 1105, 1107-08 (10th Cir. 2009). This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Acosta*, 470 F.3d at 135. In addition, under the categorical approach, a prior offense can only qualify as a "crime of violence" if all possible criminal conduct covered by a statute, including "the minimum criminal conduct necessary to sustain a conviction" under the statute, would constitute a crime of violence. *Martinez v. Mukasey*, 551 F.3d 113, 118 (2d Cir. 2008). If the hypothetical minimum conduct does not satisfy the "crime of violence" element, then the entire statute categorically fails as a predicate offense. *See Jobson v. Ashcroft*, 326 F.3d 367, 372 (2d Cir. 2003).[2]

---

[2] The "narrow" set of circumstances in which courts apply a "modified" categorical approach, by which they may look beyond the legal definition of the offense to a subset of judicial documents to determine if a conviction was for a "crime of violence," does not apply here because the Hobbs Act robbery is not divisible. *Descamps*, 133 S.Ct. at 2283, 2285. Hobbs Act robbery contains a single element with respect to violence and while that single element has alternate means by which it can be satisfied it is not divisible for purposes of *Descamps*.

As a result, post-*Descamps,* for Hobbs Act robbery under § 1951(b) to have qualified as a "crime of violence" under § 924(c)(3)'s force clause, the offense must have had as a statutory element "physical force."  As the Supreme Court held in the context of the Armed Career Criminal Act ("ACCA"), "physical force" means "*violent* force" – that is "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010) (emphasis in original).  Hobbs Act robbery, as defined by § 1951, does not meet this requirement because, as this Court explained to the jury prior to deliberations, the Hobbs Act robbery can be accomplished by putting someone in fear of future injury to his person or property, which does not require the use, attempted use, or threatened use of "violent force" or even any physical force at all.  Additionally, because the act of putting someone in fear of injury can accomplished without an intentional threat of physical force, it fails to satisfy the intentional *mens rea* requirement of the § 924(c)(3)(A) force clause.

### i.     The Act of Putting Someone In Fear of Injury Does Not Require the Use, Attempted, Use or Threatened Use of "Violent Force"

The plain language of the Hobbs Act robbery statute under 18 U.S.C. § 1951 provides that the offense can be accomplished by the act of placing another in "fear of injury, immediate or future, to his person or property."  The statute does not require that such fear be the result of an act of force.  Indeed, as this Court previously explained, the statutory element can be satisfied if the proof establishes that "a defendant has used or threatened to use … fear" and "[f]ear exists if at least one victim experiences *anxiety, concern, or worry* over expected personal *harm*." Tr. Trans., p. 2417 (emphasis added).

Conduct falling within the Hobbs Act statute, then, could be the use of "fear" and could include acts that caused a person "anxiety, concern, or worry" that his or her property would be injured.  "The concept of 'property' under the Hobbs Act is an expansive one" and  includes

7

"*intangible assets*, such as rights to solicit customers and to conduct a lawful business." *United States v. Arena*, 180 F.3d 380, 391 (2d Cir. 1999) (citing 18 U.S.C. § 1951(a) and interpreting robbery definition that includes threats against physical violence against "persons 'or property'"), *abrogated in part on other grounds by Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003); *see also United States v. Local 560 of the Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 780 F.2d 267, 281 (3d Cir. 1986) (the Circuits "are unanimous in extending Hobbs Act to protect intangible, as well as tangible property"); *United States v. Iozzi*, 420 F.2d 512, 514 (4th Cir. 1970) (sustaining conviction under Hobbs Act when boss threatened "to slow down or stop construction projects unless his demands were met.") Thus, Hobbs Act robbery can be committed by threats to cause a devaluation of some economic interest like a stock holding or to lower the value of one's real property by erecting a garish display next to it. Such threats to economic interests are certainly not threats of physical force and under the categorical approach, because conduct within the Hobbs Act robbery statute falls outside the force clause, 18 U.S.C. § 1951(b) cannot satisfy the "crime of violence" element of a § 924(c) crime.

Additionally, the term "force" at it appears in the Hobbs Act statute does not satisfy the § 924(c)(3)(A) force clause. In the Hobbs Act statute, the unlawful taking of property against a person's will can be accomplished "by means of actual or threatened force." 18 U.S.C. § 1951(b)(1). Only if all conduct falling within the definition of "actual or threatened force" in the Hobbs Act statute (as well as all other conduct, such as "fear of injury" to person or property) also constitutes "physical force" as required by § 924(c)(3)'s force clause, can the statute survive the categorical analysis. But "actual or threatened force" does not necessarily mean

"physical force," and thus the Hobbs Act fails as a predicate for the § 924 convictions on this basis, as well.

As the Second Circuit has explained in connection with the force clause of 18 U.S.C. § 16, "a provision which contains virtually identical language to § 924(c)(3)" (*Acosta*, 470 F.3d at 134), "there is a difference between causation of an injury and an injury's causation by the use of physical force." *Chrzanoski v. Ashcroft*, 327 F.3d 188, 195 (2d Cir. 2003) (concluding that Connecticut statute requiring state to prove that defendant intentionally caused physical injury did not constitute crime of violence because "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission.") That is, an offense with an element of causing physical injury does not necessarily require the use of "violent force" and thus does not constitute a crime of violence. *Id.; see also United States v. Torres-Miguel*, 701 F.3d 165, 168 (4th Cir. 2012) ("of course, a crime may *result* in death or serious injury without involving *use* of physical force.") If, as in *Chrzanoski*, causing physical injury does not satisfy the physical force element, surely neither can the mere threat of physical injury, as provided for in the Hobbs Act statute, satisfy that requirement. Indeed, several courts have noted the variety of ways in which a defendant could place another person in fear of injury without using force. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)); *see also United States v. Perez-Vargas*, 414 F.3d 1282, 1286 (10th Cir. 2005) ("several examples [exist] of third degree assault that would not use or threaten the use of physical force: . . . intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals.")

While another court in the Southern District of New York has recently held that a Hobbs Act robbery crime constitutes a crime of violence for purposes of 18 U.S.C. § 924, its strained reasoning, along with the additional clarification provided by the jury instructions in this case and a subsequent Second Circuit opinion on the force element of a Hobbs Act robbery, should render the other District Court decision unpersuasive here. In *United States v. Pena*, --- F.Supp.3d --- , 2016 WL 690746 (S.D.N.Y. Feb. 11, 2016), the court concluded as a matter of first impression that "force" as the term appears in the Hobbs Act statute is coterminous with the term "force" in 18 U.S.C. § 924(c)(3)(A) and that "fear of injury" necessarily refers to fear of injury of physical force. That decision, however, does not adequately address the type of cases – both hypothetical and actual – in which Hobbs Act robbery convictions could be or were returned and sustained without any evidence of that the "force" establishing the robbery was "physical force" as required by the force clause. For example, in *United States v. Kornegay*, 2016 WL 877950, (2d Cir. Mar. 8, 2016) (a decision post-dating *Pena*), a Hobbs Act count was sustained following a sufficiency of the evidence challenge to the force element in a case involving the theft of cell phones from stores on the basis of the testimony of an assistant store manager that one of the robbers "scream[ed] abruptly 'F' them. They are not doing anything. Take what you want", that "one of [the store] representatives tried to lock the door and with force [the assailants] were able to actually push the door open" and that the robbers "also carried tools to cut the phones from their wiring." *Id.*, at *2. As to "fear of injury," in the instant case the jury was specifically instructed that "[a] threat may be made … by a physical gesture" and that "[f]ear exists if at least one victim experiences *anxiety, concern, or worry* over expected personal *harm*." Tr. Trans., p. 2417 (emphasis added). That is, a physical gesture causing only concern about some kind of "harm" would have been enough for a jury to convict Mr. Christian

of the Hobbs Act counts – as opposed to the scenario that *Pena* contemplated, in which the fear of injury was specifically of injury caused by physical force. Given the jury instructions here, an act such as threatening to expose *Pena* should not be persuasive in determining this motion.

Because "the full range of conduct" covered by the Hobbs Act robbery statute does not require "force" against persons or property at that term must be understood under the force clause of 18 U.S.C. § 924(c)(3)(A), the Hobbs Act counts in this case cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause.

### ii. Under the § 924(c)(3)(A) Force Clause, "Physical Force" Must be Intentional, While the Hobbs Act "Fear of Injury" Can Be Satisfied Without Intentional Conduct

The language of 18 U.S.C. § 924(c)(3)(A) implicates only intentional conduct insofar as it requires proof of the "use" of force (or attempts or threats to "use" force) but that intentionality requirement is absent in the statutory definition of a Hobbs Act robbery. For this reason, as well, the Hobbs Act fails as a predicate offense for purposes of § 924.

As the Supreme Court has held when interpreting the § 16(a) force clause, to "use" means to "require[] active employment" and "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). That is, the verb "use", has been held to "contemplate[] only *intentional* conduct and refers only to those offenses in which there is a substantial likelihood that the perpetrator will *intentionally* employ physical force." *Jobson*, 326 F.3d at 373 (internal quotation marks omitted).[3] The Second Circuit held in *Dalton v. Ashcroft* that driving while intoxicated could not constitute a "crime of violence" under § 16 because it involved "speeding, crashing, harming others and/or possessing

---

[3] While this considered "use" in § 16's residual, not force, clause the term should be given the same meaning in the force clause. *See United States v. Pornes-Garcia*, 171 F.3d 142, 147 (2d Cir. 1999) ("Normally, the same term appearing in different portions of a single act is taken to have the same meaning in each appearance . . . .")

an out-of control car." 257 F.3d 200, 206 (2d Cir. 2001).  To elevate such conduct to the "use" of force, the Second Circuit explained,  would "equate[] 'physical force' with an accident," and "[a]lthough an accident may properly be said to involve force, one cannot be said to *use* force in an accident as one might use force to pry open a heavy, jammed door." *Id.* (emphasis in original). Accordingly, a crime of violence under the force clause requires the *intentional* use of physical force.

The "fear of injury" element under the Hobbs Act robbery statute, by contrast, does not require a defendant to intentionally place another in fear of injury. Therefore, it is missing the intentional *mens rea* element that is necessary under the Second Circuit's precedent.[4]  This, too, renders a Hobbs Act robbery insufficient as a "crime of violence" under the § 924(c)(3)(A) force clause.

## B. The Residual Clause of 18 U.S.C. § 924(c)(3) is Unconstitutionally Vague

Because a Hobbs Act robbery fails to qualify as a "crime of violence" under § 924(c)(3)'s force clause, as discussed above, the second question before this Court is whether the Hobbs Act

---

[4] This Court can look to cases interpreting the "intimidation" element in the federal bank robbery statute (18 U.S.C. § 2113(a)) when considering whether a Hobbs Act threat must be "intentional." Federal bank robbery may be accomplished by "intimidation," which means placing someone in fear of bodily harm – the same action required under the Hobbs Act robbery statute. *See United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) ("intimidation" under federal bank robbery statute means "an ordinary person in the [victim's position] reasonably could infer a threat of *bodily harm* from the defendant's acts."); *see also United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (11th Cir 2005) (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same). The bank robbery statute's intimidation element, just like the Hobbs Act fear of injury element, does not require *mens rea* and, indeed, this Court instructed the jury in this case that the "fear of injury" depended on "the victim's state of mind at the time of the defendant's actions" – *not*  the defendant's *mens rea*. Thus, as with "intimidation" under the bank robbery statute, fear of injury can be satisfied "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *Woodrup*, 86 F.3d at 36); *Kelley*, 412 F.3d at 1244 ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating.").

12

robbery can qualify as a "crime of violence" under § 924(c)(3)'s residual clause. In *Johnson,* the Supreme Court decided ACCA's "residual clause" was unconstitutionally vague. *Johnson* applies to the parallel "crime of violence" definition in § 924(c)(3)'s residual clause, which suffers from the same flaws as ACCA residual. Using § 924(c)(3)(B) to categorize predicate conduct as a "crime of violence" would therefore violate due process.

### i. *Johnson* Expressly Overruled the "Ordinary Case" Approach to Determining Whether a Felony Qualifies as a "Crime of Violence"

In *Johnson*, the Supreme Court held that the Armed Career Criminal Act residual clause was unconstitutionally vague because the process by which courts categorize prior convictions as violent felonies is too "wide-ranging" and "indeterminate." 135 S. Ct. at 2557. As a result, the ACCA "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id*. *Johnson* concluded that the Supreme Court's four previous attempts to articulate a workable test to determine whether a felony falls under the ACCA residual clause had failed. *Id*. at 2558-59.

The Court began its analysis by explaining that, under *Taylor v. United States*, 495 U.S. 575 (1990), the ACCA requires the categorical approach to determine whether a particular statute qualifies as a violent felony. *Id*. at 2557. Courts must assess whether a crime qualifies as a violent felony "in terms of how the law defines the offense and not in terms of how an individual might have committed it on a particular occasion." *Id*. (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).

The Court further clarified that the residual clause "requires a court to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether that abstraction presents a serious risk of potential injury." *Id*. (citation omitted). The Court linked the "ordinary case" framework to *James v. United States*, 550 U.S. 192 (2007), in which it held, "We do not view that approach as requiring that every conceivable factual offense covered by a statute must

13

necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. . . . Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id*. at 208 (citations omitted). "As long as the offense is of a type that, by its nature, presents a serious risk of injury to another, it satisfies the requirements of [the ACCA's] residual clause." *Id*. at 209 (emphasis added, brackets supplied).

*Johnson* concluded that the process of determining what is embodied in the "ordinary case" rather than "real-world facts" is fatally flawed, rendering the ACCA unconstitutionally vague. "Grave uncertainty" surrounds the method of "determin[ing] the risk posed by the "judicially imagined 'ordinary case.'" 135 S. Ct. at 2557. "*The residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' . . . involves.*" *Id*. at 2558 (emphasis added).

The *Johnson* Court considered and rejected different ways that a court might envision the hypothetical "ordinary case" since the statute offers no guidance. Specifically, the Court explained that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." *Id*. at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing en banc)). Although earlier ACCA cases tried to rely on statistical analysis and "common sense," *Johnson* concluded that these methods "failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from devolving into guesswork and intuition." *Id*. at 2559 (referring to *Chambers v. United States*, 555 U.S. 122 (2009), and *Sykes v. United States*, 564 U.S. 1 (2011)).

This flaw alone establishes the residual clause's unconstitutional vagueness. The Court, however, explained that a closely related infirmity exacerbates the problem. The Court noted that the residual clause lacks a meaningful gauge for determining when the quantum of risk under the "ordinary case" of a particular statute is enough to constitute a "serious potential risk of physical injury." *Id*. at 2558. Although the level of risk required under the residual clause must be similar to the enumerated offenses (burglary, arson, extortion, or crimes involving use of explosives), *Johnson* rejected the notion that comparing a felony's "ordinary case" to the risk posed by certain enumerated offenses cures the constitutional problem. *Id.*

The enumerated offenses failed to save the ACCA residual clause because, according the majority, comparing felonies to enumerated offenses similarly requires resorting to "a judicially imagined abstraction." *Id*. Before courts may even start the comparison, they must first determine what the "ordinary" enumerated crime entails. But the "ordinary" enumerated crimes, *Johnson* emphasized, like any other crime, "are far from clear in respect to the degree of risk each poses." *Id*. (quoting *Begay v. United States*, 553 U.S. 137, 143 (2008)). Any attempt to figure out the "ordinary" enumerated offense requires just as much guesswork as figuring out the "ordinary" predicate offense. The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary case" analysis is more than the "Due Process Clause tolerates." *Id*.

Thus, *Johnson* not only invalidated the ACCA residual clause, but it invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

15

### ii.     Under *Johnson*, § 924(c)(3)(B) Is Unconstitutionally Vague

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.[5] To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical. The ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" while Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. But the differences have no impact on the constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in Section 924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on the *Johnson* decision.[6] The Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the risk. That inquiry is the same under both the ACCA and § 924(c).

---

[5] Courts regularly compare the similarities between the residual clause in the ACCA to the clause at issue here. (Although the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical to § 924(c)(3)(B).) *See, e.g., Chambers*, 555 U.S. at 133, n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring); *United States v. Brown*, 629 F.3d 290, 296 (2d Cir. 2011) (though prior holding concerning § 16(b) does not control analysis of ACCA's residual clause, "the issue … is similar" and the Section 16(b) analysis was "instructive" in considering the ACCA residual clause); *United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B));*United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)".)

[6] *See Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other). *See also United States v. Gomez-Leon*, 545 F.3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and that interpreting U.S.S.G. § 4.1.1, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

Both statutes require courts first to picture the "ordinary case" embodied by a felony using a categorical approach (as described above), and then decide if it qualifies as a crime of violence by assessing the risk posed by the "ordinary case." *See, e.g., United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006). *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue.

For that reason, the two Circuits that have recently analyzed § 16(b) in light of *Johnson* have concluded that the residual clause of § 16(b) is void for vagueness. In *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), the Ninth Circuit noted that the language in the ACCA and that of § 16(b) (and § 924(c)(3)(B)) was similar, but more importantly, the court explained, "both the provision at issue here and the ACCA's residual clause are subject to the same mode of analysis. Both are subject to the categorical approach, which demands that courts look to the elements and the nature of the offense of conviction, rather than to the particular facts related to petitioner's crime." *Id.* at 1114 (internal quotation marks omitted). "Specifically," the court added, "courts considering both [statutes] must decide what a 'usual or ordinary violation' entails and then determine how great a risk of injury that 'ordinary case' presents." *Id.* at 1115. The Ninth Circuit explained that the residual clause of § 16 suffers from the same flaws that led the Supreme Court to invalidate the ACCA's residual clause in *Johnson*, namely that is requires courts to engage in the unguided task of imagining the "ordinary case" of an offense and then determining the necessary quantum of risk. *Id.* Even more recently, the Seventh Circuit examined § 16(b) in

17

light of *Johnson*, and held that its "language, though not identical to the [ACCA] residual clause, is materially the same." *United States v. Vivas-Ceja*, --- F.3d ---, No. 15-1770, 2015 WL 9301373, at *3 (7th Cir. Dec. 22, 2015). Regarding the first step of the categorical approach, the Seventh Circuit noted that § 16(b) – identically to § 924(c)(3)(B) – "substitutes the phrase 'by its nature' for the residual clause's 'otherwise involves conduct.'" *Id*. Those two phrases must be read synonymously, the court held, under the Supreme Court's decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which held that § 16(b) requires courts to consider whether an offense would "naturally involve a person acting in disregard of the risk that physical force might be used against another," *id.* at 10, which requires application of the categorical approach. *Vivas-Ceja*, 2015 WL 9301373, at *3. The next step in assessing § 16(b) – and § 924(c)(3)(B) – is to examine whether there exists "substantial risk" in the ordinary case, as opposed to the ACCA's "serious potential risk." The Seventh Circuit held that "[a]ny difference between these two phrases is superficial. Just like the residual clause, § 16(b) offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial.'" *Id.* Accordingly, the Seventh Circuit held that *Johnson* commands that § 16(b) is unconstitutionally vague. *Id*. at *4.

The rationale articulated by the Ninth and Seventh Circuits regarding § 16(b) applies with equal force to § 924(c)(3)(B). Section 16(b) and § 924(c)(3)(B) are identical. Indeed, in litigating *Johnson*, the government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and here pose the same problem. In noting that the definitions of a crime of violence in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

18

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23).  The Solicitor General was right. Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. *See United States v. Edmunson*, --- F. Supp. 3d ---, Criminal No. PWG-13-15, 2015 WL 9582736, at * (D. Md. Dec. 30, 2015) (holding that § 924(c)(3)(B) "suffers from exactly the same double indeterminacy as the ACC[A] residual clause"). This Court should hold the government to that concession.

Section 924(c)(3)(B), like the ACCA's residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense and how risky that ordinary case is. Because these are the identical analytical steps that brought down the ACCA's residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in *Johnson*. As a consequence, the residual clause cannot support a conviction under § 924(c).

## IV.    Conclusion

Because Hobbs Act robber under § 1951 categorically fails to qualify as a "crime of violence" under § 924(c)'s "force" clause, and § 924(c)'s residual clause is unconstitutionally vague, no legal basis exists for the §§ 924(c) and 924(j) convictions.  For the foregoing reasons, Mr. Christian respectfully requests that the Court grant this letter-motion, vacate the convictions on Counts Four and Five and dismiss those charges in the indictment.

          Respectfully submitted,

          /s/
          MEGAN WOLFE BENETT, Esq.
          Attorney for defendant Raymond Christian
          750 Third Avenue, 32nd Floor
          New York, New York 10017
          Tel.:   (212) 973-3406
          Fax:   (212) 972-9432
          Email: mbenett@kreindler.com

## CERTIFICATE OF SERVICE

      I hereby certify that on the 1st day of April 2016 I served a true and correct copy of the foregoing Supplemental Fed.R.Crim.P. 29 Motion for a Judgment of Acquittal and Fed.R.Crim.P. 33 Motion for a New Trial via this Court's ECF/CM system to all parties registered to receive service.

                                                  /s/
                                        Megan Wolfe Benett, Esq.