

750 Third Avenue
New York, NY 10017-2703
(212) 687-8181
Fax: (212) 972-9432
www.kreindler.com

September 23, 2016

<u>Via ECF</u>
The Honorable Edgardo Ramos
United States District Court
  for the Southern District of New York
40 Foley Square
New York, NY 10007

   Re: *United States v. Christian*, *et al.* (Raymond Christian) 12 Cr. 626

Dear Judge Ramos:

  I am defense counsel for Raymond Christian, who is currently awaiting determination of a pending motion and/or sentencing. Mr. Christian was convicted after trial of conspiring to commit a Hobbs Act robbery (Count One), committing a Hobbs Act robbery (Count Two), aiding and abetting the brandishing of a firearm in relation to the robbery in violation of 18 U.S.C. § 924(c) (Count Five) and aiding and abetting the use of a firearm in relation to the robbery and causing a death in violation of 18 U.S.C. § 924(j) (Count Four). Mr. Christian and others filed motions pursuant to Fed.R.Crim.P. 29 and 33 which this Court denied on Aug. 7, 2015. Thereafter, this Court allowed the defendants to file supplemental Fed.R.Crim.P.29 and 33 motions, which are currently pending. This letter is intended to (1) further supplement those motions in order to address the inadequacy of the evidence for purposes of aiding and abetting liability on Counts Four and Five; (2) clarify certain discovery requests previously raised by Mr. Christian; and (3) provide an update of recent Second Circuit activity bearing on the issues raised in the first supplemental motion.

1. <u>The Aiding and Abetting Instruction on the 18 U.S.C. § 924 Charges was Erroneous and the Evidence on Counts Four and Five was Legally Insufficient</u>

  Mr. Christian was convicted of Counts Four and Five after the jury was instructed on alternate theories of guilt – individual liability or aiding and abetting liability. *See, e.g.,* Trial Transcript ("Trial Tr."), pp. 2434, 2441. In *Rosemond v. United States*, 134 S.Ct. 1240, 1251 – 52 (2014), the Supreme Court addressed the requirements for a conviction of aiding and abetting the use of a firearm in violation of 18 U.S.C. § 924 in a case involving a drug trade as the predicate crime. The trial court in *Rosemond* had instructed the jury that it could convict the defendant if "(1) the defendant knew his cohort used a firearm in the drug trafficking crime, and (2) the defendant knowingly and actively participated in the drug trafficking crime." 134 S.Ct. at 1244. The trial court imposed no requirement that the jury find that the defendant intended the gun be used or even that he was aware of the firearm prior to the drug crime. The Supreme Court held this was error, ruling that aiding and abetting liability on an 18 U.S.C. § 924(c) count

U.S. v. Christian – 12 Cr. 626 (ER)
September 23, 2016
Page 2

requires that a defendant have advance knowledge that a gun would be used in the predicate crime and that a jury be instructed accordingly. *Id.* at 1251 – 52.

In this case, the jury was charged that it could convict Mr. Christian of Counts Four and Five as either a principal actor or as an aider and abettor. *See* Trial Tr., pp. 2434, 2441.  After being providing a blanket aiding and abetting liability instruction, the jury was told that it must ask itself three questions about each defendant:

> Did he participate in the crime charged as something he wished to bring about?
> Did he associate himself with the criminal venture knowingly and willfully?  Did he seek by his actions to make the criminal venture succeed?

Trial Tr., p. 2446.[1]  This instruction, however, incorrectly failed to instruct the jury that it had to find that Mr. Christian had "advance knowledge" of the firearm prior to when "it appear[ed] on the scene." *Rosemond*, 134 S.Ct. at 1249.  Indeed, the jury instructions in this case largely mirror similar instructions that the Second Circuit recently (in light of *Rosemond*) found improper in *Prado v. United States*, 815 F.3d 93, 98 (2d Cir. 2016).  Here, as in *Prado*, the court issued a "blanket aiding and abetting instruction requiring intent to commit the crime" but doing so did "not cure the failure to require the jury to find that defendant[] had advance knowledge of the firearm." *Id.* at 102.  The aiding and abetting jury instruction here, as in *Prado*, was thus erroneous *Id.*

Nor was the evidence sufficient with respect to aiding and abetting liability on the firearm counts for a conviction against Mr. Christian.  The government's evidence as to "advance knowledge" was directed to co-defendants Glenn Thomas ("Gucci") and Tyrell Whitaker ("Bow Wow"), who, the government contended, had been provided weapons to use in the robbery by Jamar Mallory and Kevin Burden. *See e.g.,* Trial Tr., p. 861 (Mallory testifying that "Bow Wow and Gucci" got guns "to commit a robbery … .")  Testimony about Mr. Christian and firearms concerned observations with no purported connection to the December 14, 2010 robbery. *See* Tr. Trans., pp. 1190 – 91.  As to the December 14, 2010 robbery, while government witness Anthony Baynes testified that he was involved in planning the robbery with, among others, Mr. Christian, he explained that it was "L-1" – and not Mr. Christian – who made a telephone call to obtain a gun. *See* Trial Tr., p. 476.  (Though Baynes said that Mr. Christian "and L-1 end up calling somebody to bring him a gun," Baynes only stated that L-1 was on the telephone and

---

[1] The jury convicted Mr. Christian of Counts Four and Five, but the verdict sheet does not note whether on the basis of individual or aiding and abetting liability. *See* 12-cr-626 (S.D.N.Y.) (ER), Doc. 146, Filed 08/25/14, pp. 4 – 5.  These counts thus must be considered as premised on the aiding and abetting theory as "a conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (*per curiam*).

U.S. v. Christian – 12 Cr. 626 (ER)
September 23, 2016
Page 3


offered nothing about what, if anything, Mr. Christian knew in advance of the December 14, 2010 robbery with respect to the use or brandishing of a weapon.) *See* Trial Tr., pp. 476 – 78. Indeed, Baynes could offer no testimony about who in particular had possession of a gun, saying "I don't remember who had – just some people had them." Trial Tr., p. 481. Nor does the record contain other evidence establishing Mr. Christian's advance knowledge that a gun would be used and brandished in relation to the December 14, 2010 robbery.

Given the record evidence here, no properly instructed juror could reasonably have convicted Mr. Christian on an aiding and abetting theory of liability in the absence of any testimony imputing to him advance knowledge that a gun would be used and brandished in relation to the robbery. Under these circumstances, the conviction for Counts Four and Five must be vacated.

2. Renewed Discovery Requests

On behalf of Mr. Christian, and in connection with his recent correspondence with this Court, I would like to renew prior requests for discoverable materials in the custody or control of law enforcement agencies. Specifically, Mr. Christian asks to be provided (1) access to DNA material to be tested by a defense expert and (2) a photograph taken of Mr. Christian on December 17, 2010, which would show that he had no signs of an injury as would have been expected had he been the source of the blood DNA material present on the ski mask recovered during the investigation.

Mr. Christian hereby respectfully asks that the Court direct the government to produce a sample of the evidence previously tested by an employee of the New York State Police Crime Laboratory. At trial, the government used the DNA material to link Mr. Christian to blood left on a ski mask recovered from the crime scene. This Court previously denied Mr. Christian's request (made post-trial) for funds to appoint an expert. Mr. Christian has family members and friends who are now prepared to retain an expert to analyze the DNA material at their own cost. Mr. Christian's discovery request regarding the DNA material is thus limited to directing the New York State Police Crime Laboratory, or whatever other federal, state or local government entity is in possession of the DNA material, to make the sample available to a defense expert for testing.

The second request has to do with a photograph that Newburgh law enforcement officers took of Mr. Christian on December 17, 2010, shortly after the robbery. The relevance of such a photograph is that it would reveal that Mr. Christian's physical condition about two days after the robbery was inconsistent with the injuries that would have resulted in the blood on the interior of the ski mask which the government relied on to link Mr. Christian to the robbery. That is, the photograph would document the fact that Mr. Christian had no bleeding injuries at any time near the robbery.

U.S. v. Christian – 12 Cr. 626 (ER)
September 23, 2016
Page 4

After a February 9, 2016 hearing, at which I advised the Court that I believed a photograph had been taken based on what I was able to ascertain from an audio recording of the December 17, 2010 interview, the Court asked the government to look into whether there was video of the interview available and whether the photograph that Mr. Christian sought did, in fact, exist. *See* 12-cr-626 (S.D.N.Y.) (ER), Doc. No. 282, Filed 03/11/16 (hearing transcript), pp. 8 – 9. The government then confirmed that while Newburgh police officers took a photograph of Mr. Christian on December 17, 2010, no such photograph could be located. I have since reviewed the video of the December 17, 2010 and can confirm that two Newburgh police officers interviewed Mr. Christian over the course of about three hours and that at approximately 2:47:42 into the interview they took at least one photograph of Mr. Christian. I can also represent that during the interview the officers tried to get Mr. Christian to state that he had an injury to his head; that no such injury is readily visible in the video produced to counsel; and that Mr. Christian denied any such injury existed in the video. It is during this exchange that the officers took the photograph of Mr. Christian, which they must have thought relevant to their investigation (which, at the time of the interview, they must have known involved an assailant who was injured during the course of the robbery). Given that the photograph would likely document that Mr. Christian's physical condition mere days after the robbery was inconsistent with an injury that would have been the source of the ski mask DNA evidence, I renew my request, made pursuant to *Brady v. Maryland*, 373 U.S. 83 (1983), that the government produce such a photograph. If the federal and state authorities continue to assert that the exculpatory photograph does not exist, we respectfully ask for a hearing at which the Newburgh police officers and/or other law enforcement or other government representatives responsible for maintaining the photograph at issue are required to testify in order to determine whether the loss was chargeable to the government. *See Colon v. Kuhlmann*, 865 F.2d 29, 30 (2d Cir. 1988), *United States v. Rahman*, 189 F.3d 88, 139 (2d Cir. 1999) ("When it occurs, the Government's loss of evidence may deprive a defendant of the right to a fair trial.") If the loss is chargeable to the government, Mr. Christian asks that sanctions be imposed and that he be permitted an opportunity to submit a memorandum in support of such a request for sanctions.

3. The Second Circuit's Recent Decision in *United States v. Hill*

Previously, all defendants moved to dismiss Counts Four and Five on the basis that the underlying Hobbs Act robbery acts were not "crimes of violence" for purposes of 18 U.S.C. § 924. On April 14, 2016, this Court granted a government application to defer the deadline for its opposition to those motions until three weeks after the Second Circuit rendered a decision in the matters of *United States v. Hill*, No. 14-3872, and *United States v. Barrett*, No. 14-2641, which raised the same issue regarding Hobbs Act robberies. The Court granted the government's application. On August 3, 2016, the Second Circuit issued a decision in *United States v. Hill* in which it held that a Hobbs Act robbery constitutes a crime of violence for purposes of conviction under 18 U.S.C. § 924(c). *See Hill*, 2016 WL 4120667 (2d Cir. Aug. 3, 2016). Accordingly, we believe it would be appropriate to direct the government to file its opposition or to schedule the instant case for a decision on the outstanding issue raised in supplemental motions made pursuant to Fed.R.Crim. 29 and 33.

U.S. v. Christian – 12 Cr. 626 (ER)
September 23, 2016
Page 5

4. <u>Conclusion</u>

For the foregoing reasons, Raymond Christian respectfully requests (1) that Counts Four and Five be dismissed as the jury evidence was insufficient on the issue of aiding and abetting; (2) that the government be directed to make the DNA material at issue in this case (taken from the ski mask) be made available to a privately retained DNA expert; (3) that a hearing be held on the issue of the loss of the December 17, 2010 photograph; and (4) that this Court set a date by which the government must respond to the pending supplemental Fed.R.Crim.P. 29 and 33 motions.

Respectfully,

/s/
Megan Wolfe Benett, Esq.

cc: all counsel of record via ECF
#