# KREINDLER & KREINDLER LLP
ATTORNEYS AT LAW
750 THIRD AVENUE
32ⁿᵈ FLOOR
New York, NY 10017
(212) 973-3406
Fax No. (212) 972-9432

**MEGAN WOLFE BENETT**

www.kreindler.com
mbenett@kreindler.com

November 10, 2017

<u>Via ECF</u>
The Honorable Edgardo Ramos
United States District Court
  for the Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Christian*, *et al.* (Raymond Christian) 12 Cr. 626

Dear Judge Ramos:

      I am defense counsel for Raymond Christian and submit this letter-reply in response to the government's opposition to the defense post-trial motions. For the reasons herein and those in the prior defense moving papers (*see* ECF Doc. Nos. 284, 234, 219), as well as the arguments made by Mr. Christian's co-defendants, we respectfully ask that this Court: (1) vacate the convictions for Counts Four and Five (the 18 U.S.C. § 924 counts) and/or defer decision on the motion to vacate until after the Supreme Court has rendered a decision in *Dimaya v. Sessions*, which was reargued on October 2, 2017; and (2) compel discovery.

1. **Counts Four and Five**

      Mr. Christian has moved to vacate the Counts Four and Five 18 U.S.C. § 924(j) and (c) convictions on two grounds: (1) the underlying Hobbs Act robbery and robbery conspiracy that were an element of those convictions cannot categorically constitute crimes of violence under the force clause and the statute's risk-of-force clause is unconstitutionally vague; and (2) the aiding and abetting instruction offered with respect to those counts was erroneous in light of *Rosemond v. United States*, 134 S.Ct. 1240, 1251 – 52 (2014).

      a. **The Hobbs Act Counts Are Not Crimes of Violence**

      As to the first argument – that the Hobbs Act robbery and robbery conspiracy charged in Counts One and Two are not crimes of violence for purposes of Section 924(c) – at the very least this Court should hold this motion in abeyance until after the Supreme Court renders its decision in *Sessions v. Dimaya*, 15-1498. The government claims that the Second Circuit's decision in *United States v. Hill* forecloses any argument that a stay on the issue is appropriate, but in doing

*United States v. Raymond Christian*
12-cr-626 (S.D.N.Y.) (ER)
Defense Reply
Nov. 10, 2017
p. 2 of 6

so appears to ignore (or not know) that the defendant in *United States v. Hill* filed a petition for rehearing / rehearing *en banc* on September 16, 2016 and that the Second Circuit has not yet acted on that petition. *See United States v. Hill*, 14-3872 (2d Cir.), Doc. No. 127, Filed 09/16/2016.  That the Second Circuit has held a petition for reconsideration / reconsideration *en banc* for over a year in the very case that the government claims governs Mr. Christian's argument here is a powerful argument in favor of deferring decision on this issue until after *Dimaya* is decided.  Indeed, at least one other district court within the Second Circuit has opted to hold the very issue Mr. Christian raises regarding Counts Four and Five in cases in which the underlying "crimes of violence" were a Hobbs Act robbery and robbery conspiracy in abeyance pending a decision in *Dimaya* from the Supreme Court. *United States v. Thomas*, 16-cr-50 (E.D.N.Y.) (DI), 10/12/2017 Docket Entry (in case in which defendant moved to dismiss 18 U.S.C. § 924(c) charge with underlying crimes of violence Hobbs Act robbery and Hobbs Act robbery conspiracy, "Court holds decision on this motion in abeyance pending decision in the cases pending before the 2nd Circuit and U.S. Supreme" Court.)

      Also incorrect is the government's contention that the Count Four and Count Five convictions "were tied to the Hobbs Act substantive count *not* the Hobbs Act Robbery conspiracy count" in arguing that a decision in *United States v. Barrett*, 14-2641 (2d Cir.) would have no bearing on the instant case.  That assertion is flatly contradicted by this Court's jury instructions:

> Count Four charges that: "On or about December 15, 2010, in the Southern District of New York, Raymond Christian … and others known and unknown, willfully and knowingly, during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, the robbery conspiracy, robbery, *and attempted robbery* charged in Counts One and Two above … ."
>
> …
>
> Count Five is a firearms count connected to the crimes of violence; namely, the robbery conspiracy or the robbery charged in Counts One and Two, and it charges Raymond Christian … as follows: On or about December 15, 2010, in the Southern District of New York, Raymond Christian … and others known and unknown, during and in relation to a crime of violence for which they may be prosecuted in any court of the United States, namely, the robbery conspiracy, robbery, *and attempted robbery* charged in Counts One and Two above.

Trial Transcript, pp. 2431, 2437 (emphasis added).  This is confirmed by the verdict form, in which the jury was asked to consider Counts Four and Five "[o]nly if you have found the defendants *Guilty* on Count One OR Count Two." 12-cr-626 (S.D.N.Y.) (ER), Doc. 146, Filed 08/25/14, pp. 4 – 5.  It is clear that the firearm counts here could readily be premised on the

*United States v. Raymond Christian*
12-cr-626 (S.D.N.Y.) (ER)
Defense Reply
Nov. 10, 2017
p. 3 of 6

conspiracy count. An appellate decision concerning conspiracy as an underlying crime of violence is therefore directly relevant to Mr. Christian's case.

On the merits of the argument, in addition to the points raised in the prior defense submissions (*see* ECF Doc. Nos. 284, 234, 219), the convictions for Counts Four and Five here are also imperiled by the fact that this Court instructed the jury that the underlying acts constituted crimes of violence, thus removing from the jury's consideration an element of the crime. That is, though the statute defines the crime as use of a firearm "during and in relation to … a crime of violence" and so the "crime of violence" is an element of the 924(c) act, this Court removed consideration of "crime of violence" from the province of the jury, in violation of Mr. Christian's Sixth Amendment right to trial by jury. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *see also Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151 (2013) (whether firearm was used, brandished or discharged is a "fact" that increases the mandatory minimum sentence for crime and is thus an "element" of crime that must be submitted to jury); *United States v. O'Brien*, 560 U.S. 218 (2010) (fact that firearm was a machine-gun was an element of the offense to be proved to the jury beyond a reasonable doubt, rather than a sentencing factor).

In this case, the jury was told that "if you find beyond a reasonable doubt that the defendant you are considering participated in the robbery conspiracy alleged in Count One of the indictment, then it qualifies under the law as a crime of violence for which Raymond Christian and Glenn Thomas may be prosecuted in a court of the United States. I additionally instruct you that the attempted robbery charged in Count Two of the indictment qualifies under the law as a crime of violence for which Raymond Christian, Tyrell Whitaker, and Glenn Thomas may be prosecuted in a court of the United States." Trial Transcript, p. 2435.

Under the Sixth Amendment and binding Supreme Court precedent, an element of the crime must be decided by the jury. The question of whether the Hobbs Act robbery or robbery conspiracy were crimes of violence for purposes of Section 924(c) should have been presented to the jury. The failure to do so deprived Mr. Christian of his Sixth Amendment right to trial by jury on Counts Four and Five and those convictions must therefore be vacated.

    **b. Aiding and Abetting**

On Counts Four and Five, this Court's aiding and abetting instruction was erroneous, as it failed to comply with the requirements established by the Supreme Court's decisions in *Rosemond v. United States*, 134 S.Ct. 1240, 1251 – 52 (2014), and *Alleyne*, 133 S.Ct. 2151. The verdict sheet does not note whether the Count Four and Count Five convictions were based on individual or aiding and abetting liability. *See* 12-cr-626 (S.D.N.Y.) (ER), Doc. 146, Filed 08/25/14, pp. 4 – 5. The convictions must therefore be considered as premised on the aiding and abetting theory as "a conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (*per curiam*)

*United States v. Raymond Christian*
12-cr-626 (S.D.N.Y.) (ER)
Defense Reply
Nov. 10, 2017
p. 4 of 6

Even if the Count Five instructions complied with *United Statses v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994), as the government contents, the jury was nevertheless improperly instructed insofar as they were not told that they had to find that Mr. Christian knew his cohort would brandish – not merely use or possess – a firearm.  And the government concedes that the *Medina* instruction was not given in connection with Count Four, but argues without any case law in support that the jury can be assumed to have imported subsuquent instructions for Counts Five and Six for purposes of Count Four. *See* Gov't Opposition, p. 25.

The evidence against Mr. Christian regarding how the guns were expected to be used – not merely the fact that they might be involved in some capacity – is substantially less compelling than in the case upon which the government primarily relies.  In *United States v. Sebbern*, 641 Fed. App'x 18, 21 (2d Cir. 2015), the defendant was arrested after having dropped a handgun.  Here, no witness could testify as to who brandished or discharged a weapon – indeed, even the government by the time of its closing argument could not hazard a guess as to who was the shooter.  As the prosecutor explained to the jury, "if I were you, I would have been sitting here through this trial wondering who was the shooter? Which robber shot Mr. Henry? And the fact is we don't know." Trial Transcript, p. 2205.  Here, "there was no instruction that the jury was required to find that [Mr. Christian] consciously shared the knowledge of the principal" with respect to the brandishing or discharge of the weapon that killed Mr. Henry. *United States v. Prado,* 815 F.3d 93, 102 (2d Cir. 2016).  Indeed, the government capitalized on the absence of that instruction with its argument to the jury that the identity of the shooter was immaterial.  But the failure to instruct the jury that a defendant had to have intended and had advance foreknowledge of this critical element of the crime of conviction, brandishing for Count Five and discharge for Count Four, is error warranting relief here – no matter how abundant the evidence may have been regarding advance foreknowledge of the use of the weapon.

The conviction for aiding and abetting the brandishing of the weapon was rendered after a failure to instruct the jury that it had to find proof beyond a reasonable doubt that Mr. Christian knew and facilitated the brandishing (not the mere use or possession) of the firearm.  And the conviction for Mr. Henry's death – which cannot plausibly be argued to have been caused by anything other than the discharge of the weapon – required the jury to be instructed that Mr. Christian had advance foreknowledge that a firearm would be discharged. *Alleyne*, 133 S. Ct. at 2163 – 64 ("Because the finding of brandishing increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt. The judge, rather than the jury, found brandishing, thus violating petitioner's Sixth Amendment rights.")  Without such instructions, and with a trial record so bereft of evidence concerning the events surrounding the weapon's brandishing and discharge that the government was left to argue that the shooter's identity was immaterial, "there is a reasonable probability of a different trial outcome had the jury been properly instructed." *United States v. Prado*, 815 F.3d 93, 104 fn 3 (2d Cir. 2016) (on plain error review, finding that erroneous aiding and abetting instruction compelled vacatur, and noting the higher standard for a sufficiency challenge.)

*United States v. Raymond Christian*
12-cr-626 (S.D.N.Y.) (ER)
Defense Reply
Nov. 10, 2017
p. 5 of 6

   **2.  Discovery**

   Over a year ago, Mr. Christian asked to have access to DNA material in the government's possession to test at his own expense.  The government waited nearly twelve months to object to that request.  It is difficult to see what reasonable argument it has to do so.  There will be no financial cost to New York State or the United States of America.  A speedy end to this litigation cannot be foremost in the government's mind or it would not have waited a year to oppose the request.  If the government is concerned at some level that the DNA evidence will provide a basis for exonerating Mr. Christian, then that is all the more reason to allow him to hire an expert – who would of course be subject to *voir dire* by the government and approval by this Court – to perform an analysis of the DNA material.

   As for the photograph, the video footage is in no way a reasonable replacement for the picture that we reasonably believe tends to exonerate Mr. Christian.  Frankly, it is hard to see how the government can suggest that the quality of the video footage, taken probably 20 feet away from where Mr. Christian was positioned and from a camera that did not capture the area of his head that was the subject of the photo, is equivalent to a picture which we expect would show that a mere two days after the robbery during which Mr. Christian was alleged to have sustained a head injury that caused him to bleed onto a ski mask, he showed no signs of injury.  The video is, however, useful insofar as it reveals just how desperately the interviewing officers were in trying to induce Mr. Christian to state that he had sustained the very injury that we believe the photograph would reveal did not exist. *See* Video Interview, 2:45:00 – 2:48:00.

   If, as the government has stated, the photograph "was never saved or downloaded," why has that assertion been veiled in the contingent language of "the Government understands" and "it appear[s]" that no such photograph was saved, downloaded or filed? *See* Gov't Opposition, p. 24.  It would seem wholly appropriate under the circumstances – where defendant's brother was an early suspect in the crime, where the DNA analysis was consistent with what a first-order relative's DNA would have been and where the government acknowledges that such a photo at one point in time existed – to require the law enforcement agents who were involved in taking but then not downloading, storing or saving such a photograph to state as much under oath, as well as to offer the reasons for not providing that evidence to Mr. Christian.  (Again, the video is not an adequate substitute for the photograph and the government has its own affirmative obligation to produce evidence material to guilt or innocence under *Brady v. Maryland*, 373 U.S. 83 (1983), irrespective of defense counsel's express request for such evidence.)

   Upon review of any such sworn statements. Mr. Christian would ask for permission to renew his request for a hearing to determine whether the absence of the photograph is chargeable to the government if the evidence supports such an argument. *See Colon v. Kuhlmann*, 865 F.2d 29, 30 (2d Cir. 1988), *United States v. Rahman*, 189 F.3d 88, 139 (2d Cir. 1999) ("When it occurs, the Government's loss of evidence may deprive a defendant of the right to a fair trial.")

*United States v. Raymond Christian*
12-cr-626 (S.D.N.Y.) (ER)
Defense Reply
Nov. 10, 2017
p. 6 of 6

### 3. Conclusion

For the reasons herein as well as those set forth in prior defense filings, including those submitted by his co-defendants, Raymond Christian respectfully requests (1) that Counts Four and Five be dismissed or held in abeyance until after the Supreme Court renders a decision in *Diymay*; (2) that the government be directed to make the DNA material at issue in this case available to a privately retained DNA expert, pending this Court's approval of such an expert; (3) and that the government be directed to produce a sworn statement from the law enforcement agents who interviewed Mr. Christian on December 17, 2010 as to what happened to the photograph after it was taken.

Respectfully,

_____/s/_____
Megan Wolfe Benett, Esq.


cc: all counsel of record via ECF